STATE OF IOWA, Appellee, v. CARL WEAVER, Appellant.

CRIMINAL LAW: Evidence—Other Offenses—Conclusive Showing
1  of Intent. Evidence of offenses separate and distinct from the
   one charged, though of the same nature, committed with others
   than prosecutrix, are inadmissible on the theory of showing in-
   tent, etc., when the evidence attending the offense charged
   *conclusively* establishes intent. So held on a charge of licen-
   tious conduct with a child.

CRIMINAL LAW: Trial—Conduct of Counsel—Offer of Irrelevant
2  and Inflammatory Evidence. The mere *offer*, in the presence of
   the jury, of irrelevant testimony, is by no means necessarily re-
   versible error; but such *offer* is reversible error, even though
   offered under permission of the court, when the testimony is
   not only irrelevant, but is such, from its very nature, as to
   manifestly inflame, to a high degree, the minds of the jury;
   and especially is this true when the county attorney knows,
   through previous apprisal by the court, that the court will ex-
   clude the offered testimony. The right of the accused to a fair
   trial surmounts the right of the State to make appealable rec-
   ords on moot questions.

PRESTON, C. J., LADD and EVANS, JJ., dissent.

*Appeal from Polk District Court.*—HUBERT UTTERBACK,
Judge.

FEBRUARY 9, 1918.

DEFENDANT was convicted of the crime of lewd, immor-
al, and lascivious acts, as defined by Section 4938-a, Supple-
ment to the Code, 1913; and judgment of imprisonment in
the county jail for an indeterminate period, not to exceed
four months, was entered against him. From this judgment,
the defendant appeals.—*Reversed.*

*Parsons & Mills,* and *O. M. Brockett,* for appellant.

*H. M. Havner,* Attorney General, *H. H. Carter,* Assist-
ant Attorney General, and *Ward Henry,* County Attorney,
for appellee.

STEVENS, J.—The statute defining the crime charged is as follows:

1. CRIMINAL LAW:
evidence: oth-
er offenses:
conclusive
showing of
intent.

"Any person over eighteen years of age who shall wilfully commit any lewd, immoral or lascivious act upon or with the body or any part or member thereof, of a child of the age of thirteen years, or under, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, or of such child, shall be punished by imprisonment in the penitentiary not more than three years, or by imprisonment in the county jail not more than six months, or by fine not exceeding five hundred dollars."

The indictment in this case charged lewd, immoral, and lascivious acts upon the body and person of Mildred Churchman, a child under the age of thirteen years. Minutes of the testimony of other girls under the age of thirteen years, who testified to similar acts committtd by the defendant upon them at other times than the act complained of, were attached to the indictment. Before one of these girls was called by the State as a witness, the defendant's attorney called the attention of the court to the minutes of the testimony attached to the indictment, and objected to the county attorney's calling any of these witnesses, or attempting to offer the matters set forth in the minutes of their testimony in evidence upon the trial of this case. No record appears to have been made of these objections; but we gather, from the statements of counsel appearing in the record, that there was general discussion upon the question, and the court announced that the testimony would not be received. Later, one of the witnesses was called and sworn; but before any questions were propounded to her, the attorneys for the defendant objected to the witness' being examined relative to the alleged immoral acts committed upon her by the defendant, stating that the court had already announced its ruling upon the admissibility of the

testimony and that any attempt upon the part of the State to offer the testimony would be prejudicial to the defendant, and asking that the county attorney be not permitted to question the witness as to said matters. To this objection, the county attorney answered that whatever discussion had preceded the calling of this witness had been in the absence of the defendant; that no record thereof had been had; that he believed the testimony admissible; and he asked permission of the court to propound questions for the purpose of making such record as would enable him to present the question of the admissibility of the evidence to the Supreme Court upon appeal.

Permission to do so was granted by the court, and the following questions were asked and objected to by the attorneys for defendant, upon the ground that same were incompetent, immaterial, irrelevant, and that the mere asking thereof was prejudicial to the defendant:

"Q. Do you recall anything happening, or him attempting to do anything to you down there, Jean?

"Q. What is the fact, Jean, as to him ever attempting to feel your legs or otherwise while you was in the post office? Now don't answer the question until after the ruling of the court.

"Q. Did he ever try to do anything to you down there in the post office?"

It is contended by counsel for the defendant that the county attorney, in calling the witness and asking the above questions, with knowledge that answers thereto would not be received over the defendant's objections, was guilty of such misconduct on his part as to require a reversal of this case. If the testimony sought was admissible, then the county attorney would be guilty of misconduct, if at all, only upon the theory that the previous announcement of the court had settled the law of the case, and the county attorney should have avoided further reference to the matters complained of.

In *State v. Blydenburg*, 135 Iowa 264, the court held the repeated attempts of counsel for the State to offer cer- tain evidence, after the court had held the same inadmissible, misconduct. In that case, however, emphasis was given to the fact that a full record of the offer of the testimony had been made, and counsel was persisting in offering same over the rulings of the court. In the case at bar, the county at- torney was granted permission by the court to call and pro- pound questions to the witness, for the purpose of making a record of the offer, and the rulings of the court. If the offered testimony in this case was inadmissible, the preju- dicial character of the questions propounded to the witness and the indicated character of the testimony sought could not have been otherwise than prejudicial to defendant.

It is argued on behalf of the State that the offered tes- timony comes within one of the well-known exceptions to the general rule excluding testimony of other similar of- fenses, and that same was admissible for the purpose of showing the intent with which the defendant did the acts charged in the indictment. There is a certain class of of- fenses in which the intent with which the act is performed is an essential issue, and the burden of proving the same rests upon the State, and evidence of similar offenses under certain restrictions is admissible. This rule is illustrated in cases where forgery, uttering forged instruments or pass- ing counterfeit money, cheating by false pretenses, embezzle- ment, receiving stolen property, and numerous other of- fenses are charged, in which the intent with which the act was done might have been entirely innocent. *State v. O'Connell*, 144 Iowa 559; *State v. Desmond*, 109 Iowa 72; *State v. Sheets*, 127 Iowa 73; *State v. Stice*, 88 Iowa 27; *State v. Vance*, 119 Iowa 685. Such evidence is not ad- missible under the general rule in cases where the intent may be inferred from the nature of the act charged.

The New York Court of Appeals, in *People v. Molineux,* 168 N. Y. 264 (61 N. E. 286), said:

"There are cases in which the intent may be inferred from the nature of the act. There are others where willful intent or guilty knowledge must be proved before a conviction can be had. Familiar illustrations of the latter rule are to be found in cases of passing counterfeit money, forgery, receiving stolen property, and obtaining money under false pretenses. An innocent man may, in a single instance, pass a counterfeit coin or bill. Therefore, intent is of the essence of the crime, and previous offenses of a similar character by the same person may be proved to show intent."

See, also, *People v. Lonsdale,* 122 Mich. 388 (81 N. W. 277); *State v. Spray,* 174 Mo. 569 (74 S. W. 846). The offense charged in *State v. Stice,* supra, was clearly one in which the act might have been an accident, or committed without the thought of violating the statute in the respect charged. The burden, therefore, rested upon the State to prove the intent. In *State v. Sheets,* supra, the court based its holding upon the theory that, as the several like offenses of which evidence was received were committed upon the same occasion, each immediately following the other, the evidence was admissible, under the rule stated in *State v. Robinson,* 170 Iowa 267, as follows:

"The general rule is that the State is not permitted, in its efforts to establish the crime charged, to introduce evidence of another substantive offense; but the rule is that, where the acts are all so closely related in point of time and place, and so intimately associated with each other, that they form one continuous transaction, the whole transaction may be shown, what immediately preceded and what immediately followed the act complained of, for the purpose of showing the *scienter* or *quo animo* of the party charged. * * * Distinct, independent, substantive offenses, not re-

lated to the one charged, committed at different times or different places, cannot be shown against the defendant; but not so when the time, the place, the circumstances, and the parties, all have some relation to and are directly involved in the act charged, at the time of its commission or immediately before or after; and we think this is the doctrine of the cases cited."

The evidence of Mildred was that, when she went to the post office, where the defendant was, at the time, working, to post a letter, he took her in the rear of said post office, placed her upon a bench, unloosened his own and her clothing, and proceeded so far in an effort to have sexual connection with her that she was sore for two or three days. It will be observed that the statute defines the offense as "lewd, immoral or lascivious act upon or with the body or any part or member thereof, of a child of the age of thirteen years, or under, with the intent," etc. The acts described by witness were lewd, immoral, lascivious. Defendant sustained no relationship toward Mildred from which an innocent intent upon his part could possibly be drawn. No possible explanation consonant therewith could be offered. The act was of such an immoral, lascivious, and indecent character as to conclusively show the debased and licentious condition of defendant's mind. From the facts shown, not only is the intent defined by the statute inferable, but every other intention is necessarily excluded. The intent was inherent in the act itself, and could not have been an issue requiring other evidence to establish. The evidence offered was clearly inadmissible.

2. CRIMINAL LAW: trial: conduct of counsel: offer of irrelevant and inflammatory evidence.

This brings us to the question whether the county attorney was guilty of prejudicial misconduct in propounding the above interrogatories. Certain latitude must be allowed a prosecutor in the introduction of the State's testimony, and ordinarily prejudicial error would

not result from merely asking questions seeking to elicit irrelevant matter. The testimony sought to be elicited was irrelevant, and the interrogatories propounded to the witness carried with them the suggestion that defendant had committed a like offense at some other time upon the witness, or had been guilty of some serious immoral conduct toward her. Under the statute, the offense can only be committed upon children under thirteen years of age, and its revolting character is well calculated to inflame the passion and arouse the prejudice of a jury against any person of adult years accused of such indecent conduct with a child of tender years; and the effect of the question upon the accused was necessarily prejudicial.

The record discloses that the witness was sworn, and the questions propounded in the usual manner,—that is, in the presence of the court and jury; and the questions were propounded after the court had declared to the county attorney that the evidence sought thereby would not be admitted.

The duty of the prosecuting attorney is not alone to secure a conviction of the guilty, whenever possible, but also to safeguard the rights of the accused, by closely observing the rules of evidence and prescribed procedure. While the questions were propounded with the permission of the court, upon the theory that the State should have an opportunity to make a proper record for appeal, still, on account of the character of the offense which it was claimed had been committed against the witness, and suggested by the line of questioning indicated, coupled with the fact that same was clearly inadmissible, we think same was rendered highly prejudicial to the rights of the defendant, and that it was misconduct on the part of the prosecutor to call the witness and pursue the line of questioning indicated. *State v. Blydenburg*, supra; *State v. Roscum*, 119 Iowa 330; *Hammer v. Janowitz*, 131 Iowa 20; *State v. Greenland*, 125

Iowa 141; *State v. Moon,* 167 Iowa 26. While the right of appeal on the part of the State is doubtless a valuable one, the effect of an appeal in this case would only have been to settle a rule of evidence in no wise affecting the defendant. The right of the State to obtain a decision of the appellate court upon a mooted question of law was not paramount to the right of the defendant to have a fair trial, without regard to the character of the offense charged.

Other alleged errors are argued by counsel for appellant which are not likely to occur upon a retrial of this case, and we need not consider them herein. For the reasons pointed out, this cause is—*Reversed.*

WEAVER, GAYNOR, and SALINGER, JJ., concur.

GAYNOR, J. (concurring). I concur in the opinion of the majority as written.

The basic thought of the dissent seems to be that the county attorney is not shown to have acted in bad faith. While many of the cases seem to emphasize the good faith of the county attorney, yet I am unable to conceive how an act which, in and of itself, was prejudicial to the rights of the defendant, who, under the law, was entitled to a fair and impartial trial, can be cured by a mere finding of good faith on the part of the person who inflicted the wrong, or a failure to find that he acted in bad faith in inflicting the wrong.

PRESTON, C. J. (dissenting). It is not claimed in the majority opinion that the reference to the minutes attached to the indictment was in the presence or hearing of the jury, or made in such a way as that the jury knew what the minutes contained. This matter was first called to the attention of the court by counsel for the defendant, so that there can be no prejudice as to that. The first and last of the three questions set out contain nothing that could possibly be prejudicial, unless in connection with the other question. The only claim that could be made is in regard to the other, and that is just one question. There is no per-

sistent effort by the prosecutor to get improper matters before the jury, as in some of the cases cited. Nor can it be claimed that the prosecutor acted in bad faith. It is not claimed that the law as to the admissibility of such evidence is so well settled that the prosecutor, in good faith, might not properly make his record for review in this court. Indeed, the court granted permission to make the record. As said, there was the one question asked that could by any possibility be claimed as prejudicial, and that is, whether the defendant attempted to feel of the little girl's limbs. And it is not stated in the majority opinion that the trial jury heard a word of that. I have examined the record; and the abstract simply shows that the questions were asked during the trial, but it does not show that the jury heard. In fairness, I concede that it does not show that it did not hear. There was no objection by defendant that the offer was made in the presence of the jury. The better practice in such cases is to make the offer in writing, or to the reporter in such a way as that the jury may not hear, or in the absence of a jury. We have so held. *Arnold v. Livingstone,* 155 Iowa 601, 607. I think we ought to assume that, in this case, the trial court did its duty, and required the record to be made in the manner indicated,—that is, if any attempt had been made to make the offer in an improper way. I am not so sure that the evidence was not admissible. As bearing upon this, see *State v. Vance,* 119 Iowa 685; *State v. Stice,* 88 Iowa 27; *State v. Neubauer,* 145 Iowa 337, 345.

I am inclined to agree with the majority on the question as to the admissibility of the evidence, and shall not further discuss that point. Mr. Justice Ladd is of opinion that the evidence tendered, in view of its exclusion by the trial court, must be treated as inadmissible, and that, the State not having appealed, the ruling, being favorable to the defendant, cannot be questioned by him, and that the point is not before the court.

I concede that, if the evidence is not admissible, and if the question was asked in the presence and hearing of the jury, it would have been better to have made the offer in the way before indicated. But even if the evidence was offered in the presence and hearing of the jury, it seems to me that the asking of this one question is not sufficient to warrant a reversal. We are in the habit of saying, in certain cases where it is claimed remarks prejudicial to a defendant were made by the court, that the jury attach great weight to what the judge says. The rule ought to work both ways. Here, the court said by his ruling that the evidence was not proper for the jury to hear and consider. The jurors take an oath that they will decide the case on the evidence received. The trial court tells them, in instructions, that they must find the defendant guilty, if at all, from the evidence received, and beyond any reasonable doubt. To hold that this jury violated their oaths, refused to follow the instructions of the court, and ignored all the evidence received, and decided the case or were influenced by one question unanswered, if they heard it, is, in my opinion, unbelievable. It is not likely that the jury thought of the question at all five minutes after it was asked.

It is said by the majority that the prosecutor ought to observe the rules, and that defendant is entitled to a fair trial. All this is conceded, and I think it ought to be conceded that counsel for defendant, as well, ought to observe the rules. This is not always done. I do not understand that a fair trial means an absolutely perfect trial. It is not likely that there ever was that kind of a trial. The law ought to be enforced, and such crimes as this, and all others, punished. The prosecutor may, and ought to, prosecute vigorously, but, of course, fairly. Merely propounding questions calling for improper evidence, when done in good faith, without repetition, and to which answers were promptly excluded, has never been regarded as prejudicial to the ac-

cused. Our holdings are to the contrary, and in no instance
has the asking of an improper question, unless repeated, in
defiance of the court's ruling, with manifest purpose of
getting the matter before the jury in spite of such ruling,
been denounced as prejudicial to a fair trial. We have re-
peatedly declared that the issue is so largely within the
discretion of the trial court that its determination rarely
will be interfered with.

In *State v. Roscum,* 119 Iowa 330, after the evidence
tendered had been ruled out, like evidence was sought to be
elicited from each of two other witnesses, and this was held
to be prejudicial misconduct on the part of the county at-
torney. The case was distinguished from *State v. Gadbois,*
89 Iowa 25, 32, for that, in the latter case, the offer of im-
proper evidence was not repeated, and therefore the pre-
sumption of good faith on the part of the prosecuting attor-
ney not overcome. In that case, the clerk of court was asked
to examine the records of his office and say whether defen-
dant and one Widner had not been indicted for burglarizing
a hardware store, had pleaded guilty and been sentenced,
and whether the attorney for defendant was not attorney
for Widner in that case. And this court, though denouncing
what was done as misconduct, approved the ruling that
there was no prejudice, on the theory that the county at-
torney could not be said to have acted in bad faith.

In *State v. Waterbury,* 133 Iowa 135, it appeared, from
the examination of a witness, that his daughter had been en-
gaged to marry defendant, whereupon the county attorney
inquired: "Has your daughter got a child?" An objection
as immaterial, and for the purpose of prejudicing the jury,
was sustained. The county attorney responded, "That is
all;" and there was no ruling or answer. This was de-
nounced as misconduct, but we said that:

"Whether such conduct worked prejudice, however, was
peculiarly within the knowledge of the trial court, and sel-.

dom will a case arise calling for a reversal of its conclusion. In view of its decision, we cannot say that defendant was prejudiced by the inquiry."

See also *State v. Beal,* 94 Iowa 39, where propounding irrelevant and prejudicial questions, objections thereto being promptly sustained, was held not to have prejudiced the accused; *State v. Tippet,* 94 Iowa 646; *State v. Greenland,* 125 Iowa 141, where the ruling turned largely on whether the county attorney acted in good faith. See *State v. Noble,* 66 Iowa 541.

None of the decisions relied upon by the majority sustain its conclusion, and *State v. Greenland,* supra, is opposed thereto.

In *Hammer v. Janowitz,* 131 Iowa 20, the court, speaking through Weaver, J., concerning asking an improper question, had this to say:

"It was his right to offer the testimony, if he believed it admissible, and to preserve a record of his offer and exception. Had he contumaciously persisted in trying to get the matter before the jury, and thus override the ruling against him, we might well feel justified in regarding it as prejudicial misconduct. *State v. Roscum,* 119 Iowa 330. But we see nothing in the record to indicate that the offer was not made in good faith, nor can we presume that appellant was or could have been prejudiced thereby. It is constantly happening that parties to a jury trial propound questions and offer testimony which the courts deem inadmissible, and record is made of the offer and ruling for use, if need be on appeal; and if the fact of offering incompetent or immaterial testimony, which is excluded, is to be held a cause for granting a new trial, few, if any, verdicts could stand the test of such rule."

It seems to me that, if such should be the rule, the county attorney would not dare to ask any question which might be held incompetent, unless he knows to a certainty that it

is admissible and he, and not the court, would be required to determine that question, and at his peril, if the court should determine, when the question is asked, that the evidence is inadmissible.

In *State v. Moon*, 167 Iowa 26, *State v. Blydenburg*, 135 Iowa 264, and *State v. Roscum*, 119 Iowa 330, questions were contumaciously repeated, in utter disregard of the court's ruling, and on this ground the conduct was denounced as prejudicial. See also *State v. Ean*, 90 Iowa 534.

In no case to be found in the books has the mere propounding of a question, in good faith, without repetition, to a witness by a prosecutor, where objection thereto has been promptly sustained, been denounced as prejudicial error. Only when counsel, in defiance of the ruling, repeats the inquiry in the same or different form, or to different witnesses, and thereby undertakes to, and probably succeeds, in improperly influencing the jury, will the asking of improper questions be regarded as such misconduct and so prejudicial as to necessitate a new trial. Even where witnesses are allowed to answer improper questions, the rule prevails that the jury will be assumed to heed the ruling and follow the striking out of such evidence, or instructions to the jury to disregard it, and that the error will thereby be cured. *State v. Spurbeck*, 44 Iowa 667; *State v. Helm*, 97 Iowa 378; *State v. Scroggs*, 123 Iowa 649; *State v. Cristy*, 154 Iowa 514; and other decisions too numerous for citation.

There is no room in this case for even a suspicion that the county attorney acted otherwise than in good faith; and whether he did or not, there was no prejudice to a fair trial. The circumstance that the attorney general has insisted in his brief that the evidence was admissible, and that *State v. Stice*, 88 Iowa 27, *State v. Sheets*, 127 Iowa 73, and *State v. Desmond*, 109 Iowa 72, rule the point, strongly

confirms the *bona fides* of the State's contention. Moreover, the jury was fully advised that the questions were being asked in order to make a record, and not to be answered. No repetition was indulged in. The county attorney, in view of the cases last cited, believed, as he said, that the evidence tendered was admissible, and he had the right to make up a record on which the ruling of the court might be reviewed in this court, as by statute authorized, in the event that the jury's finding should be adverse to the State.

As said, to say that the jury will be assumed to have given any attention to, or to have been influenced by, what occurred, would be placing entirely too low an estimate on the acumen and intelligence of the average modern jury. This jury had sworn to try the case according to the evidence, and obey the instructions, which plainly told them:

"You are to try and determine this case according to the evidence produced and submitted to you in open court."

It seems to me that the ruling of the majority is contrary to the practice prevailing everywhere, and assuming not only gross ignorance, but a perverse spirit, on the part of the jury, and exacting of the county attorney that he shall, at the peril of reversal, tender only such evidence as is admissible.

I am clearly of opinion that there was no prejudice from asking the questions, and that the judgment should be affirmed.

MR. JUSTICE LADD concurs in this dissent.

EVANS, J. (dissenting). I join in the dissent on slightly different grounds from those stated by the Chief Justice. I agree with much of his discussion.

The trial judge, not in the presence of the jury, advised the respective attorneys that he deemed certain evidence appearing in the minutes of the grand jury as inadmissible. The county attorney asked that he be permitted to make a

record. Leave was expressly given him so to do. He kept himself strictly within his leave, so obtained. How can he be charged with *misconduct* for doing the very thing which he had obtained leave to do from the court in advance? There was, therefore, no *misconduct* of the county attorney.

If we assume that these three questions were propounded in the presence of the jury, yet there was no request by defendant's counsel that the jury be excused during the making of such record. The questions put were not sprung as a surprise on him. He knew in advance just what they were to be. He could have had the jury excused for the asking.