STATE OF IOWA, Appellee, v. C. J. VAN HOOZER, Appellant.

**JURY: Qualifications—Membership in Anti-Thief Association.** A juror's membership in an anti-thief association does not disqualify him from jury service on the trial of a charge of larceny, when it is not made to appear that the said association was in any manner concerned in the prosecution of the pending charge, and when the court was satisfied that the juror could and would try the cause impartially.

**LARCENY: Evidence—Testimony Explanatory of Presence of Witness.** A witness may, on the trial of a larceny charge, explain his presence at the place where the alleged stolen article was kept, by testifying as to his duties with reference to such articles.

**EVIDENCE: Competency—Allowable Conclusion.** A statement to the effect that an article alleged to have been stolen has not been recovered, is an allowable conclusion.

**WITNESSES: Impeachment—Abuse of Right to Cross-Examine Good-Character Witness.** The State may cross-examine defendant's good-character witnesses as to their knowledge of rumors or reports in the community of defendant's bad character with reference to particular transactions, but it is reversible error for the county attorney, in argument, directly or indirectly to assume *that the supposed transactions are true.*

*Appeal from Pottawattamie District Court.*—J. B. ROCKAFEL-
LOW, Judge.

### DECEMBER 13, 1921.

DEFENDANT was indicted for the crime of larceny of a Ford
touring car. He was convicted, and appeals.—*Reversed and
remanded.*

*John J. Hess,* for appellant.

*Ben J. Gibson,* Attorney General, and *B. J. Flick,* Assistant
Attorney General, for appellee.

FAVILLE, J.—I. Appellant first assigns error in overruling
his objections to a certain juror. Upon the *voir dire,* it ap-
peared that this juror was a member of an association known as

1. JURY: qualifica-
tions: membership
in anti-thief as-
sociation.

"The Anti-Horse Thief Association." It was
disclosed that this was an organization formed
for the purpose of bringing to justice persons
who may be guilty of stealing horses or automobiles, and that
the juror had contributed to a fund which is used by said asso-
ciation to give rewards to persons who secure the conviction of
those who steal automobiles within a certain territory. It did
not appear, however, that the association was in any way con-
cerned in the prosecution of the appellant. The juror testified
that his membership in this organization would in no way bias
his judgment in the instant case, and that he could try the case
fairly and impartially. The case comes fairly within the rule laid
down by us in *State v. Wilson,* 8 Iowa 407, under somewhat
similar circumstances. It was not error to overrule appellant's
objections to the qualifications of the juror.

II. The court permitted the witness Peck to testify, over
appellant's objection that it was a conclusion and incompetent,
that it was his business to check the cars in the garage from which

2. LARCENY: evi-
dence: testimony
explanatory of
presence of wit-
ness.

the State claimed the car in question was stolen,
and that he had to put a tag on each car and take
it off when the car went out. This evidence was
merely incidental to the testimony of this wit-

ness regarding the alleged theft of the car, and was explanatory of his presence in the garage. There was no error here.

III. A witness who was one of the proprietors of the garage from which the State claimed the car was stolen was asked to state whether or not the car had been recovered, if he knew, and answered that it had not been. The car was taken from the garage of this witness, and was in his possession at the time of the taking. The court did not err in overruling the objections urged to this testimony that it was incompetent and a conclusion.

3. EVIDENCE: competency: allowable conclusion.

IV. The appellant produced three witnesses upon the trial, who testified that appellant's general moral character was good. One of these witnesses was named Collins. On his cross-examination by the county attorney, the following transpired:

4. WITNESSES: impeachment: abuse of right to cross-examine goodcharacter witness.

"Q. Did you ever talk with Mr. Ikeman about him? A. I don't know Mr. Ikeman. Q. Mr. Ikeman is the man who lost a car at the Ford garage about three months ago. A. I don't know him." Q. Had you ever heard that the defendant was concerned in the selling of stolen automobile tires while working for the Hughes-Irons Motor Company? A. I never did. Q. Have you ever heard that the defendant, at the time of his arrest in connection with the sale of stolen tires, had a stolen tire which he admitted was a stolen tire in his possession in the storeroom of the Hughes-Irons Motor Company? A. No."

Palmer, another of appellant's character witnesses, was asked, on cross-examination:

"Did you ever hear of this defendant going with a man named Christensen to C. M. Pennell, a man who lost some tires, and trying to settle up the case that was pending against Christensen concerning some stolen tires?"

Smith, another of said witnesses, was interrogated by the county attorney as follows:

"Did you ever hear that, in November, 1917, defendant went with a man named Christensen to a man named Pennell, from whom a number of automobile tires had been stolen, and endeavored to settle with Mr. Pennell for the stolen tires?"

Timely objections were interposed to these questions, which

objections were overruled.  Thereafter, in rebuttal, the State called the party Pennell, referred to in the above questions, and also one B. O. Spillman, both of whom testified that appellant's reputation for general moral character was not good.  Appellant's counsel did not cross-examine these witnesses.  In argument to the jury, the county attorney said:

"Gentlemen of the jury, as against this [referring to defendant's witnesses as to character] I did something which they say is very unfair.  I did a thing that I know I had a right to do, and as prosecuting attorney of this county, I would have been derelict in my duty had I not done it.  I brought in three witnesses who testified to the contrary.  You will remember that, when I was cross-examining Collins, Smith, and Parmer, I said to them (in order to find out one's reputation, you have to find out what people say about him), and I said, 'Have you ever heard that this defendant sold three stolen tires to Mr. Spillman?'  No, they had never heard of that.  'Had you ever heard that, about November, 1917, he was arrested with some stolen tires, at least one of which was kept in the storeroom of the Hughes-Irons Motor Company?' and the answer was 'No.'  I put the same question to all of them, 'Had they ever heard that this defendant, together with Mr. Christensen after the defendant had been arrested, went to Mr. Pennell and tried to make settlement for those stolen tires?' and to all such questions, the witnesses replied that they had never heard.  Now, gentlemen of the jury, I have tried to be fair; so I called Mr. Pennell and Mr. Spillman here, and asked them as to this man's reputation and as to his character.  Mr. Pennell and Mr. Spillman were here, and testified to their dealings in a general way, and to what they knew about the character and reputation of this man, and they testified that it was not good, but that it was bad.  Now, gentlemen of the jury, did you hear any cross-examination on that score?  They knew what I asked their character witnesses.  I could not offer any further evidence of character; and why didn't they ask Mr. Pennell about those tires?  Why didn't they ask him?  I could not ask him, but they could have asked him where he got his information as to this man's character.  They could have gone into this in detail, and found out what his statements were based upon; but they didn't do that.  They accuse me of being

unfair in presenting the evidence. I feel that it was nothing but the fair thing to bring these men in here, to give these people the opportunity to cross-examine them with reference to these things if they wanted to."

This entire line of argument was duly objected to by appellant's counsel, but no rulings appear to have been entered by the court. Further argument of a similar character, obviously intended, not as a legitimate discussion of the evidence in the case, but for the express purpose of seeking to unduly prejudice the jury, was indulged in by the county attorney. We cannot set our seal of approval upon such methods to secure the conviction of one charged with crime. Ability, skill, alertness, and zeal in a public prosecutor are commendable, and should be encouraged. It is for the good of society, for the welfare of the State, that crime shall be punished, and that the prosecution of criminals shall be vigilant and vigorous. But, under our laws, the person charged with crime has certain well known rights which the State is bound to respect. Time and again we have declared that proof of other crimes than the one with which a defendant is charged is not admissible against him. The State cannot do, by the indirect method resorted to in the instant case, that which it would not be permitted to do directly.

*State v. Kimes*, 152 Iowa 240, cited by counsel for appellee, does not justify the proceedings had in the instant case. In said case, we said:

"While the rule is that, in rebutting evidence of good moral character offered by defendant, the State cannot introduce evidence as to particular transactions, it is certainly competent, on cross-examination of a witness who has testified as to defendant's good moral character, to ask whether there have not been rumors or reports in the community as to his bad character, with reference to particular transactions."

We do not intend to depart from the rule thus announced; but, in the instant case, the county attorney went much further in cross-examination than could be allowed under this rule, and supplemented this by argument highly prejudicial and exceedingly improper. We are disposed to allow a wide latitude in the arguments of counsel, realizing the native ability of the average juror to make due allowance for oratorical embellish-

ment and histrionic display; but we cannot tolerate abuse of the proprieties of argument, and permit counsel to go unleashed into the fields of denunciation and accusation, to secure conviction of one charged with crime.

Because of the matters herein discussed, this case must be reversed and remanded for a new trial. It is so ordered.— *Reversed and remanded.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.