STATE OF IOWA, Appellee, v. FLOYD HIXSON, Appellant.

**CRIMINAL LAW: New Trial—Prejudicial Cross-examination.** Reversible error may result from the act of the county attorney, while cross-examining the good-character witnesses of the defendant, in persistently and insistently injecting into his questions and by-remarks (and in the face of repeated adverse rulings by the court) incompetent and irrelevant matter, highly derogatory to the character of the defendant, and naturally prejudicial to him.

**1**

**FALSE PRETENSES: Indictment—Indefinite Identification of Property.** An indictment which charges the obtaining by false pretenses of "a stock of merchandise consisting of groceries, dry goods, drugs, and fixtures," must describe or point out the property in such manner *as to individualize it from all other property of like character:* e. g., by charging its exact location. An allegation of ownership is not, in and of itself, sufficient.

**2**

Headnote 1: 16 C. J. p. 892; 17 C. J. p. 300.   Headnote 2: 25 C. J. p. 631.

Headnote 1: 22 R. C. L. 104.   Headnote 2: 11 R. C. L. 860.

*Appeal from Jefferson District Court.*—D. M. ANDERSON, Judge.

OCTOBER 19, 1926.

The defendant was prosecuted upon a charge of cheating by false pretenses, whereby he and others obtained from one Singleton valuable property consisting of a stock of dry goods. There was a verdict of guilty, and the defendant has appealed.—*Reversed.*

*Ralph H. Munro,* for appellant.

*Ben J. Gibson,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

EVANS, J.—I. Under the evidence for the State, three persons were implicated in the fraud which is the basis of the prosecution. These three were the defendant and Hinshaw and Gray. Gray has been heretofore convicted, and is serving his sentence. Gray was a nonresident, and was the prime actor in the transaction. He became a witness for the State in this prosecution. Both the defendant and Hinshaw resided on and operated farms, respectively, in the near vicinity of Singleton's residence. Both of them also engaged more or less in the real estate business. The fraud perpetrated on Singleton was gross. Hixson's defense was that he himself was deceived by Gray, and that he did not himself know the fraud that Gray was perpetrating. This fraud consisted in delivering to Singleton a spurious deed for land in Missouri, where Gray lived, purporting to be signed and acknowledged by the owner thereof; whereas in fact no such land existed, and no such persons existed as the purported grantor and the purported notary public. The defendant's guilt or innocence turned upon the question whether he himself was cognizant of the fraudulent character of the transaction.

Many assignments of error are laid. One of these is that the defendant was prevented from having a fair trial by improper conduct on the part of the attorney for the prosecution in the cross-examination of defendant's character witnesses. The record upon which this complaint is predicated may be set forth briefly:

1. CRIMINAL LAW: new trial: prejudicial cross-examination.

The defendant called five character witnesses, each of whom testified, on direct examination, unequivocally to the good reputation of the defendant. The first of these witnesses was Luithly, a bank cashier. His cross-examination was as follows:

"I have heard about this particular deal,—yes. Q. You have heard of others before this time? You remember of hearing about the time he and Hinshaw tried to swindle the Gaines Brothers out of their stock of hardware here in Fairfield?

"Mr. Munro: Object to that question as insinuating and improper question.

"The Court: Overruled. (Exception.)

"Q. You never heard of that? A. No, sir. Q. Now, you know as a matter of fact you have heard it frequently said in that community that Hixson is a dead beat,—don't pay his debts? A. No, sir. Q. You know there are judgments against him over in Keokuk County that are not satisfied? A. I don't know.

"Mr. Munro: Objected to as an improper question.

"The Court: Sustained. (Exception.)"

Morgan, also a character witness, was cross-examined as follows:

"Q. Who did you ever hear say anything for him in that respect? A. Well, I heard Ott Smitter, for one man. He said he thought he was all right. That is one I remember of. Q. And when was that you heard that? A. That is since this case come up. Q. That is, since it became advisable to try to show that Hixson had a moral character?

"Mr. Munro: Object to that argument and insinuation, and I object to it on the part of counsel, and ask the court to admonish counsel as an attempt to prejudice the jury.

"The Court: Sustained. (Exception.)"

Meacham, another character witness, was cross-examined as follows:

"What I understand goes to make up moral character is being a good citizen,—various things,—being a good neighbor, and doing as you wish to be done by, and so forth and so on. Q. Paying your debts? A. Yes, sir. Q. You know, as a matter of fact, Hixson don't pay his debts? A. I think he does. Q.

You know, as a matter of fact, there are judgments in Keokuk County against him that have been standing there for years that have not been paid?

"Mr. Munro: Object to that as improper question.

"The Court: Sustained. (Exception.)

"Q. Just tell us again, so Mr. Munro can hear it, what you say you understand goes to make up good moral character? A. I beg your pardon, Mr. Munro. Didn't you hear what I said?

"Mr. Munro: Yes, sir.

"Q. Say it again. A. I said, being a good citizen, and paying your debts, and doing as you wish to be done by. Q. Do you know that Hixson pays his debts? A. As far as I know, he does, as far as he can. It's been pretty hard, the last five years, for a man to pay all his debts. Q. You know, as a matter of fact, that he hasn't paid his debts? A. No, sir, I do not.

"Mr. Munro: The court sustained the objections to that once, and I ask the court to admonish counsel, as an attempt to prejudice the jury.

"The Court: Objection sustained. (Exception.)

"Q. Well, as a matter of fact, haven't you heard that he does have— A. I have not. Q. —debts that he hasn't paid? A. No, sir.

"Mr. Munro: I think that counsel has practiced law long enough to know when he is going into the face of the rulings of the court, and I ask the court to stop this attempt to prejudice the jury. I object to it as improper.

"The Court: Objection sustained. (Exception.)"

Spanier, another character witness, was cross-examined as follows:

"Q. All right. What does good character mean? What do you understand it to mean? You know, as a matter of fact, there are some people over in that community at least that frankly express themselves as thinking he is a cheat and a crook, don't you? A. Well, I don't know about that. Q. You don't know about that? A. No. Q. You know there are a number of people over in that community that frankly express themselves as thinking he is a liar and a dead beat? A. (No answer.) Q. You have heard people so express themselves over there, haven't you? A. I haven't yet. Q. You haven't yet? A. No."

Hadley, the last character witness, was cross-examined as follows:

"Q. Have you ever heard any remarks about the trading activities of he and a fellow by the name of Hinshaw? A. I have heard something about them,—yes. Well acquainted with them. Q. I say, you have heard considerable talk about the slippery deals that—

"Mr. Munro: I object to that insinuation, and I move to strike that remark out of the record,—improper.

"The Court: Sustained as to the slippery part of it. (Exception.)

"Q. You have heard about different deals or trades that Hixson and Hinshaw were implicated in, haven't you? A. I have known they were in partnership sometimes in trades. Q. Well, you have heard some of those trades questioned, haven't you, Mr. Hadley? A. Well, possibly some. I don't hear. as much, though, as some other folks, probably, and I haven't heard a great deal."

The impropriety of much of this cross-examination is self-evident. That its natural effect upon the jury would be prejudicial, is also self-evident. That it was not inadvertent, but was persistent and purposeful, must also be said. The State used no character witnesses in rebuttal. We must assume, therefore, that the State had no evidence upon which it could impeach the general reputation of this defendant for good moral character. This fact seriously challenges the good faith of the cross-examination. In their effect upon the jury, some of these questions were equivalent to assertions of previous evil transactions and of bad character. These questions were persisted in in spite of the adverse rulings of the court. Upon this record, they were wholly lacking in justification. We have repeatedly condemned this practice, and have been compelled thereby too frequently to reverse the judgment below. *State v. Van Hoozer,* 192 Iowa 818; *State v. Poston,* 199 Iowa 1073, and the cases therein cited.

II. The defendant demurred to the indictment on the ground that it did not sufficiently describe the property obtained from Singleton. The descriptive part of the indictment was in these terms:

"A stock of merchandise consisting of groceries, dry goods,

drugs, and fixtures of the value of one thousand dollars ($1,000.00) in lawful money of the United States of America, and of the personal property, goods, and chattels of the said E. A. Singleton.''

The general rule is that an indictment which charges the obtaining of property by false pretenses must meet substantially the same requirement of description as is required in an indictment for larceny. A description sufficient to individualize the offense charged, is required. We think that the description in the indictment before us clearly falls short in that regard. The description before us is certainly no better than that considered in the case of *State v. Jackson*, 128 Iowa 543. There is nothing technical about this ruling, as contended for by the State. Under our statutes, the requirements of an indictment have been reduced to a minimum. But this minimum of requirement must be obeyed. We are not holding it necessary to describe the separate articles that make up the stock of goods. But the stock of goods itself, as a unit, should have been in some manner described, so as to individualize it from all other stocks of goods of like character. To say that it belonged to Singleton was proper, as far as it went. But this of itself was not a sufficient description. We have always so held. A stock of goods is usually contained in some store, at some particular location. If such was the case here, then such location ought to have been given by some proper description. This would have localized and individualized the said stock of goods, and distinguished it from all others, whether they were owned by Singleton or not.

*2. FALSE PRE- TENSES: indictment: indefinite identification of property.*

We hold, therefore, that the indictment was insufficient in its description.

Other features of the record we do not find it necessary to consider. For the reasons herein indicated, the judgment below must be reversed.—*Reversed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.