STATE OF IOWA, Appellee, v. ANCIL NEIFERT, Appellant.

JUNE 26, 1928.

*Johnston & Shinn,* for appellant.

*John Fletcher,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *Frank A. Nichol,* County Attorney, for appellee.

KINDIG, J.—On March 2, 1927, the grand jury of Monroe County returned an indictment against the defendant-appellant, accusing him of the crime of (statutory) rape, committed January 6, 1927, upon one Thelma Ferguson, who was then about 13 years of age. To this charge, the defendant pleaded not guilty. Accordingly, the cause was called for trial March 17th of the same year, and the jury returned a verdict of guilty. Because of alleged errors in rulings upon evidence, refusal to give re-

quested instructions, the giving of erroneous instructions, and the misconduct of the prosecuting attorney, thirty-six assignments are made. However, we find it necessary to discuss but one of them.

I.   Errors which are relied upon for reversal should be argued. If this is not done, the failure amounts to a waiver. *State v. Hassan*, 149 Iowa 518; *State v. Ivey*, 196 Iowa 270; *State v. La Vere*, 194 Iowa 1373; *State v. Conklin*, 153 Iowa 216; *State v. Pell*, 140 Iowa 655; *State v. Vandewater*, 203 Iowa 94; *State v. Gibson*, 204 Iowa 1306.

II.   An assignment must be something more than a mere general statement. Specification of the complaint should be made. *State v. Vandewater*, supra; *State v. Gibson*, supra.

III.   Appellant bases a major grievance upon the proposition that the prosecuting attorney, during the trial, asked improper questions, to the extent that prejudice resulted therefrom. Objections to these interrogatories were properly sustained by the trial court; yet the county attorney continued that unallowable conduct. This action on the part of the prosecutor took place during the cross-examination of the appellant. That part of the record including the inquiries, objections, and rulings is as follows:

"Q. Isn't it a fact that you seduced your present wife? (Objected to as incompetent, irrelevant, immaterial and prejudicial. The Court: Sustained.)   Q. So this is not the first trouble of this kind that you have been in? (Objected to as incompetent and immaterial. The Court: Sustained.)   Q. How many times do you suppose you have been to dances down at Lovilia and Hamilton while your wives were at home, you two fellows [defendant and Lloyd Ricker]? (Objected to as immaterial, and not cross-examination. The Court: Sustained.)   Q. Haven't you and Lloyd Ricker been out with these two girls from Lovilia, Julia Andrew and Ella Brown, more than a dozen times in a car in this county and in Lucas [county] and in Marion [county] on this same sort of an escapade? (Same objection. Same ruling.)   Q. Do you remember of being off on a trip with these two girls [Julia Andrew and Ella Brown], you and Lloyd Ricker, to a dance over at Haddock one night?

(Same objection. The Court: Just a moment. You are asking about two different girls. That is not Thelma,—you are not asking about Thelma, is that it? [The girl charged with having been raped.] Mr. Nichol: I think, Thelma wasn't along at that time. The Court: Objection sustained.) Q. Didn't you take Ella Brown and Julia Andrew to Knoxville one night, and stay all night with them down there at the hotel along last fall? (Same objection. The Court: Sustained.) Q. Isn't it a fact that you violated that parole [one granted after conviction for a felony and imprisonment in the penitentiary] by a transaction down at Lovilia with another girl just like this, and that was the reason for the violation of the parole? (Mr. Shinn: I object to this as incompetent, irrelevant, and immaterial, not proper cross-examination, and intensely prejudicial on the part of the prosecution. The Court: Sustained.)"

It was the theory of the case, as adopted by the prosecution, and finally submitted to the jury by the court, through its instructions, that corroboration of the prosecuting witness could be supplied by showing other and different transactions between her and appellant, having a tendency to indicate lascivious conduct, as charged. But throughout the record, the presiding judge made it plain to the prosecuting attorney that testimony relating to appellant's conduct toward or relationships with other women or girls was entirely immaterial and irrelevant, and had no place in the record. Notwithstanding this, the prosecutor, by asking the objectionable interrogatories, continually and effectively brought before the jury the thought that appellant did have criminal relationships with other women. Manifestly, such was done without establishing appellant's guilt or innocence in relation to those foreign matters. Nevertheless, the jury unquestionably, without any proof, would conclude that the appellant must have committed these disreputable offenses, for no other reason than that the prosecutor suggested them in his questions. Many times in the course of our judicial pronouncements we have condemned this practice. State v. Moon, 167 Iowa 26; State v. Weaver, 182 Iowa 921; State v. Poston, 199 Iowa 1073; State v. Scott, 194 Iowa 777; State v. Hixson, 202 Iowa 431; State v. Van Hoozer, 192 Iowa 818.

Concerning such improper cross-examination and equally objectionable argument, we said, in State v. Van Hoozer, supra:

"We cannot set our seal of approval upon such methods to secure the conviction of one charged with crime. Ability, skill, alertness, and zeal in a public prosecutor are commendable, and should be encouraged. It is for the good of society, for the welfare of the State, that crime shall be punished, and that the prosecution of criminals shall be vigilant and vigorous. But, under our laws, the person charged with crime has certain well known rights which the State is bound to respect. Time and again we have declared that proof of other crimes than the one with which a defendant is charged is not admissible against him. *The State cannot do, by the indirect method resorted to in the instant case, that which it would not be permitted to do directly.*" (The italics are ours.)

Likewise, we expressed the same thought in *State v. Hixson*, supra, in these words:

"In their effect upon the jury, some of these questions were equivalent to assertions of previous evil transactions and of bad character. These questions were persisted in, in spite of the adverse rulings of the court. Upon this record, they were wholly lacking in justification. We have repeatedly condemned this practice, and have been compelled thereby too frequently to reverse the judgment below."

So, too, in *State v. Poston*, supra, our language is:

"* * * But the most serious complaint * * *" is regarding "the conduct of the prosecuting attorney, who persisted in asking questions along these lines in spite of the fact that the court ruled against him. We are unable to understand why prosecuting attorneys persist in thus infracting the well established rules of practice. This court has repeatedly warned prosecutors about these dangers, and it seems rather strange that, in spite of these warnings, prosecutors persist in this practice. However, we presume that the field is so attractive that they cannot refrain from browsing therein, if possible. The result, under such circumstances, is always the same as it is in this case. It puts into the record a reversible error, and necessitates on our part the reversal of the case, where, if more careful attention had been given to the well settled rule, such action here would be unnecessary."

Also, in *State v. Weaver,* supra, we suggested:

"The testimony sought to be elicited was irrelevant, and the interrogatories propounded to the witness carried with them the suggestion that defendant had committed a like offense at some other time upon the witness, or had been guilty of some serious immoral conduct toward her. * * * The duty of the prosecuting attorney is not alone to secure a conviction of the guilty, whenever possible, but also to safeguard the rights of the accused by closely observing the rules of evidence and prescribed procedure. While the questions were propounded with the permission of the court, upon the theory that the State should have an opportunity to make a proper record for appeal, still, on account of the character of the offense which it was claimed had been committed against the witness and suggested by the line of questioning indicated, coupled with the fact that same was clearly inadmissible, we think same was rendered highly prejudicial to the rights of the defendant, and that it was misconduct upon the part of the prosecutor to call the witness and pursue the line of questioning indicated."

Again, in *State v. Moon,* supra, we declared:

"It is not contended here by the State that it was entitled to prove other offenses or crimes not charged in the indictment, and it is scarcely conceivable that the prosecuting attorney believed such evidence could rightfully be admitted, if objection was made thereto. Having then once asked the question, and obtained the court's ruling thereon that it was inadmissible, he could not thereafter repeatedly and persistently reiterate the inquiry in a form carrying with it the implication or insinuation that other offenses of that nature had been committed by the defendant, without abuse of a prosecutor's privilege sufficient to vitiate a conviction obtained under such circumstances. This has been very frequently held by this and other courts, and it is a rule so absolutely essential to a fair and impartial trial that its propriety is not open to reasonable objection."

Thus, also, in the case at bar, although the practice was severely condemned in the authorities cited, the prosecutor, nevertheless, persisted in asking and re-asking questions highly inflammatory, and bristling with prejudicial innuendoes against

the appellant. What difference could it possibly make in this case whether or not appellant had seduced his wife before he married her? Then, too, it may, with equal propriety, be asked what his conduct toward the other women mentioned (other than prosecutrix) had to do with this transaction. Where is any materiality in the inquiry as to whether or not appellant's parole was revoked because of his relationship with some other girl? Such subject-matters were entirely immaterial and irrelevant. They, however, could have had but one effect upon the fact-finding body, and that was to incite them against the appellant as a debaucher of all women, including his own wife. And that is so, regardless of the truth or falsity of the suggestions made by the prosecuting attorney when he propounded the harmful interrogatories. Forsooth, under the circumstances, appellant was called upon, contrary to the theory of the trial, to defend himself, not alone against the charge in the indictment under which he was being tried, but also, in addition thereto, all the many and various offenses suggested by the county attorney in such questions.

The fact that the trial court made it unnecessary for appellant to answer these inquiries did not remove the evil effect. Silence on appellant's part, even with the permission of the district court, condemned, rather than absolved, him therefrom in the eyes of the jury, under the burning fire of the prosecutor's insinuations. Anyway, in the instances inquired about, there is nothing in the record to determine whether or not the inference against appellant was that he had perpetrated a similar offense against girls under the age of 16 years.

Because of the doctrine announced in the above citations, we are constrained to hold that, due to said infraction of the rules relating to criminal practice, appellant is entitled to a new trial. Consequently, the judgment of the district court must be, and hereby is, reversed, and the cause remanded.—*Reversed and remanded.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.