STATE OF IOWA, Appellee, v. W. J. ROUNDS, Appellant.

No. 41111.

132

MAY 9, 1933.

A. C. Peterson, and A. E. Sheridan, for appellant.

Edward L. O'Connor, Attorney-general, Walter F. Maley, Assistant Attorney-general, and Martin M. Cooney, County Attorney, for appellee.

KINTZINGER, J.—The indictment charged the defendant with committing the offense of lewd and lascivious acts with Clara Jean

Buck. The defendant pleaded not guilty. On October 11, 1930, he called at the home of Mr. and Mrs. Buck for the purpose of securing a girl to help his wife. Mr. and Mrs. Buck lived on a farm but were both absent when defendant called. The Buck children, consisting of Harvey aged 13, Richard 11, Daisy 10, Clara Jean 7, Nellie 8, and a baby were at home. The defendant had recently rented a farm near the Bucks. His wife was sick and needed help, and he was advised that he might secure one of the Buck girls for that purpose.

The children told the defendant that they had some rabbits, and he went to the rabbit pen with them. They also told him they had some calves in the rear of the barn. He first looked at the rabbits and then went to the barn to see the calves, taking Clara Jean Buck with him. There is no° necessity of going into specific details in setting out the facts.

I. One of the errors complained of by defendant was the admission of testimony tending to show the commission of a similar offense with Daisy Buck at the rabbit pen just prior to the offense charged with Clara Jean Buck. In offenses of this nature the *intent* may be inferred from the nature of the act, and it is unnecessary to show the commission of separate and distinct acts of a similar nature as showing intent. This is the general rule. State v. Marvin, 197 Iowa 443, 197 N. W. 315; State v. Weaver, 182 Iowa 921, 166 N. W. 379; People v. Hunter, 218 Mich. 525, 188 N. W. 346. The reason for this rule is that the facts shown in connection with this kind of an offense sufficiently and fully infer the intent defined by the statute. In the case of State v. Weaver, 182 Iowa 921, on page 926, 166 N. W. 379, 381, this court speaking through Justice Stevens says:

"From the facts shown, the intent defined by the statute is not only inferable, but every other intention is necessarily excluded. The intent was inherent in the act itself, and could not have been an issue requiring other evidence to establish."

This rule, however, has its exceptions. State v. Robinson, 170 Iowa 267, 152 N. W. 590, 593. In this case we said:

"The general rule is that the state is not permitted, in its efforts to establish the crime charged, to introduce evidence of another substantive offense, but the rule is that, where the acts are

all so closely related, in point of time and place, and so intimately associated with each other that they form one continuous transaction, the whole transaction may be shown—what immediately preceded and what immediately followed the act complained of—for the purpose of showing the scienter or quo animo of the party charged. * * * Distinct, independent, substantive offenses, not related to the one charged, committed at different times or different places, cannot be shown against the defendant; but not so when the time, the place, the circumstances, and the parties all have relation to and are directly or indirectly involved in, the act charged at the time of its commission, or immediately before or after, and we think this is the doctrine of the cases cited."

The acts with Daisy Buck were said to have been committed on the same day, at the rabbit pen, prior to the acts charged with Clara Jean. In the cases holding that evidence of other distinct, independent, and substantive acts of a similar nature were not admitted, it was shown they were unrelated in time. In this case the evidence of his acts with Daisy Buck were so closely related in time and circumstance with the acts charged as to Clara Jean that the testimony was admissible.

II. Complaint is made of the cross-examination of the defendant and that of the character witnesses produced by him. Some of the questions asked the defendant on cross-examination contained insinuations that he had been guilty of a similar offense with a girl at Postville eight years before. No such offense was proven. Such evidence on cross-examination was highly prejudicial, when taken in connection with the cross-examination of defendant's character witnesses, which was of a more serious nature.

The defendant lived at Postville, Iowa, about 1924. His cross-examination showed that in 1923 he sold stockings to some members of the Meyer family at Postville. The county attorney, on cross-examination, sought to show that the defendant might have left Postville suddenly because he had known a daughter of Mr. Meyer. After showing this, the following questions were asked of defendant's character witnesses. "Would you consider a person of good moral character if you had known that he had been guilty of lascivious acts with, or assaulting a child ten years of age in Postville?" Another: "Did you ever hear that this man had the reputation of being a chicken thief in that community?"

As it cannot be shown directly that a similar offense may have been committed by defendant at some other time or place, it cannot be shown by indirection or innuendo, as indicated by these questions.

It was reversible error for the prosecuting attorney to ask these witnesses on cross-examination questions which might indirectly inject such prejudicial matters into the case. The objections to some of these questions were overruled and others sustained. In spite of the adverse ruling of the court, the prosecuting attorney persisted in asking the same questions of other witnesses. This practice has been condemned by this court. State v. Van Hoozer, 192 Iowa 818, 185 N. W. 588; State v. Poston, 199 Iowa 1073, 203 N. W. 257; State v. Hixson, 202 Iowa 431, loc. cit. 435, 210 N. W. 423, 424.

In the latter case we said:

"The impropriety of much of this cross-examination is self-evident. That its natural effect upon the jury would be prejudicial is also self-evident. * * * In their effect upon the jury some of these questions were equivalent to assertions of previous evil transactions and of bad character. These questions were persisted in in spite of the adverse rulings of the court. Upon this record they were wholly lacking in justification."

We recognize the rule that it is competent on cross-examination of a character witness to ask whether there have not been rumors or reports in the community as to his bad character with reference to particular transactions. State v. Kimes, 152 Iowa 240, 132 N. W. 180.

Referring to this rule, this court said, in State v. Van Hoozer, 192 Iowa 818, on page 822, 185 N. W. 588, 589:

"We do not intend to depart from the rule thus announced, but, in the instant case, the county attorney went much further in cross-examination than could be allowed under this rule, and supplemented this by argument highly prejudicial and exceedingly improper."

In the case at bar the state offered evidence tending to show his reputation for truth and veracity was not good. This evidence, however, could not justify asking the questions on cross-examination

hereinabove set out. The questions asked were highly prejudicial and the objections thereto should have been sustained.

■ III. Complaint is also made of the court's ruling in permitting the parents, Ivy and W. G. Buck, to relate in detail the statements made to them by their children after their return home, and in permitting Clara Jean Buck to relate on the witness stand what she told her parents on October 11 about what transpired between herself and the defendant.

These statements were made quite a while after the transactions occurred. The testimony was clearly hearsay, was not part of the res gestae, and not competent for any purpose.

Testimony of complaints made are admissible as such, but it is not permissible to allow witnesses to relate the full details of statements made to them long after the occurrence of the acts complained about. Goulding v. Phillips & Lansing, 124 Iowa 496, 100 N. W. 516; Norman v. Chicago & N. W. Ry. Co., 110 Iowa 283, 81 N. W. 597; Whitney v. Sioux City, 172 Iowa 336, 154 N. W. 497; Purcell v. Chicago & N. W. Ry. Co., 109 Iowa 628, 80 N. W. 682, 77 Am. St. Rep. 557; Hinnah v. Seaba, 193 Iowa 1219, 188 N. W. 909; State v. Powers, 181 Iowa 462, 164 N. W. 856; 6 A. L. R. 1011.

The evidence offered greatly exceeded mere complaints but included detailed statements of what the children told them in a body and what each of the children told them separately.

Mr. Buck was asked, "What did *they* tell you had happened?" to which he answered, "Why *they* told us that there had been a man there and he drove into the yard and had opened the gate," and then continued to relate in detail everything testified to by each of the children and more. The statements made to the parents were told them long after the defendant and the children were at the rabbit pen and the barn and a considerable time after the defendant left.

After the occurrences complained of, Richard went to the farm house of their neighbors, Mr. and Mrs. Jarchow, who came over to the Buck farm with Richard. On their return, the defendant had already left the Buck farm. They spent some time there with the children and left. Mr. and Mrs. Buck returned quite a while after the Jarchows left.

Richard Buck was more disturbed than the rest of the children, but this was because he claimed the defendant struck him in the

chest and knocked him down. The girls were not particularly excited because of any alleged occurrence with them.

The detailed statements made by the children to their parents were not so closely related to the acts themselves and were not made under such circumstances as to be part of the res gestae. State v. Powers, 181 Iowa 452, on page 461, 164 N. W. 856; State v. Richards, 33 Iowa 420, 421.

In the case of State v. Richards this court said:

"It is a well-settled rule that where the prosecutrix, in an indictment for rape, is examined as a witness, the fact of her making complaint is evidence, but the particulars of such complaint are not. Whart. Am. Cr. Law (3d Ed.) 522, 306; * * * 3 Greenl. Ev., Sec. 213; 2 Bishop on Cr. Proc. Secs. 911-912. The rule, as laid down by Greenleaf, is as follows: 'Though the prosecutrix may be asked whether she made complaint of the injury, and when and to whom, and the person to whom she complained is usually called to prove that fact, yet, the particular facts which she stated are not admissible in evidence, except when elicited on cross-examination, or by way of confirming her testimony after it has been impeached. On the direct examination the practice has been merely to ask her whether she has made complaint that such an outrage has been perpetrated upon her, and to receive only a simple "yes" or "no." Indeed, the complaint constitutes no part of the res gestae; it is only a fact corroborative of the testimony of the complainant; and where she is not a witness in the case, it is wholly inadmissible.' "

In State v. Powers, 181 Iowa 452, on page 461, 164 N. W. 856, 859, we said:

"We hold it is a well-settled rule that where the prosecutrix is examined as a witness 'the fact of her making complaint is evidence, but the particulars of such complaint are not.' "

This rule was modified in some of the Iowa cases to the extent of permitting a statement as to what was done generally, but was never relaxed to the extent of permitting the witness to relate the details of the alleged offense.

At the trial, Clara Jean was also permitted to testify *as to what she had told her parents* on their return home October 11, 1930.

After the occurrence of the acts charged, Richard Buck had time to go into the house, from there to go to the Jarchow home some distance away.

The Jarchows say the boy seemed excited when he got to their place, but they did not tell of anything then said by him. It might be that Richard was then still excited and under the circumstances some things he told the Jarchows might have been admissible as part of the res gestae. They accompanied Richard to his home, where they remained some little time talking to the children. At that time none of the children related the facts connected with the offense charged in this indictment. After remaining there some little time, the Jarchows returned to their home. Thereafter Mr. and Mrs. Buck returned. At that time the children were not so disturbed by what happened as to make their statements admissible as part of the res gestae. It might have been competent for the children to make a complaint of what happened in a general way, but we believe it would be relaxing the res gestae rule too much to permit the admission of detailed statements made to their parents at that time.

■ IV. Defendant also complains of the court's refusal to submit the offenses of assault and battery and assault, as included offenses.

The offense charged in the indictment could not be committed without the commission of an assault or assault and battery, unless it was committed with the consent of the prosecutrix. Such is the rule adopted in the recent case of State v. Hoaglin, 207 Iowa 744, 223 N. W. 548, 550, in which the defendant was charged with statutory rape. The cases reviewing the question of when "included offenses" should be submitted to the jury are fully discussed in the Hoaglin case, and it would be of no useful purpose to review them here. It will suffice, however, to quote briefly from that case. Therein the court says:

"In an early case, Benham v. State, 1 Iowa 542, the indictment was for mayhem, but did not in terms charge the commission of the crime of assault and battery. The defendant was convicted of the latter offense. It was the claim of the defendant that under the indictment he could not be convicted of the crime of assault and battery. This court held against the defendant, and quoted approvingly from McBride v. State, 2 Eng. [7 Ark.] 374, the fol-

lowing: 'Every attempt to commit a felony against the person of individuals, involves an assault. Prove an attempt to commit such felony, and prove it to have been done under such circumstances, that had the attempt succeeded, the defendant might have been convicted of the felony, and the party may be convicted of an assault with intent to commit such felony. If you fail in proving the intent, but prove the assault, the defendant may be convicted of the common assault.' "

It may be that the statutory offense charged in this case might not include an assault or assault and battery, but this could only happen if consent to do the act charged was given by the prosecutrix. There is no evidence showing any such consent, but there is evidence from which the jury might find that an assault, or an assault and battery had been committed. For these reasons we believe that assault and assault and battery were included offenses, and should have been submitted. Benham v. State, 1 Iowa 542; State v. Barkley, 129 Iowa 486, 105 N. W. 506; State v. Welsh, 73 Iowa 106, 34 N. W. 765; and cases cited in State v. Hoaglin, 207 Iowa 744, 223 N. W. 548. For an extensive note citing numerous cases supporting this rule, see 6 A. L. R., page 989 to page 995.

V. Complaint is also made of the court's instruction No. 9 reading as follows:

"If you find from the evidence, etc., that * * * the defendant, etc., with intent to arouse, appeal to or gratify either his own lust or passion or sexual desires, or the lust, passions, etc. of Clara Jean Buck, etc., *took hold of her and hugged and kissed her OR* placed his hand under her clothing and upon the legs, body or private parts, etc. * * * of said child, * * * then you should find the defendant guilty of the crime charged but if you fail to so find you should find him not guilty."

This instruction authorized the jury to find the defendant guilty of the offense charged if he *hugged and kissed her OR* placed his hand under her clothing, etc. It would permit a conviction for the act of *hugging and kissing* alone without the commission of any of the other acts constituting the gravamen of the offense charged. Under the evidence the jury might have found that the act of placing his hand upon her body and under her clothing, etc., was

not committed, but, if they found that he hugged and kissed her, they could still find him guilty of the offense charged in the indictment. Such a verdict would not be warranted under the statute. It is therefore erroneous.

VI. Complaint is also made of instruction No. 16 in which the court instructed the jury to determine the case solely on the evidence admitted, under the instructions of the court without any reference to the absence of evidence. Such an instruction is criticized in State v. Patrick, 201 Iowa 368, 207 N. W. 393.

VII. Complaint is also made of the instruction given on reasonable doubt because not sufficiently comprehensive to permit a reasonable doubt to arise from the "absence of evidence."

In view of the necessity for a new trial, we call attention to these matters so that they may not be overlooked on a retrial.

In view of the errors herein pointed out, the judgment of the lower court must be and is hereby reversed.

KINDIG, C. J., and STEVENS, ALBERT, and ANDERSON, JJ., concur.