H. C. Purcell, Administrator, Appellant, v. The Chicago & Northwestern Railway Company.

**Duty to Trespasser:** railroads. A railroad is liable for the death of a trespasser on one of its bridges, who was run over by a train, where the engineer could have stopped it in time to avoid the accident, had the fireman after he had discovered the trespasser on the bridge, promptly notified the engineer of the danger.

**Duty of Trespasser.** The fact that the trespasser, a man sixty-five years old, might have jumped to the ground, a distance of over eight feet, or that he might have laid down on the ties, does not relieve the railroad company if its employes neglected to exercise reasonable care to avoid the collision after they had discovered him on the bridge.

**Evidence:** res gestæ. What an engineer whose engine ran over a man said at the inquest five and one-half hours after the accident, is not admissible as part of the *res gestæ*.

*Appeal from Harrison District Court.*—Hon. George W. Wakefield, Judge.

Saturday, October 28, 1899.

On the 21st day of March, 1895, plaintiff's decedent was killed by one of defendant's trains, and this action is to recover the damage sustained by the estate. The verdict was, by direction of the court, for the defendant, and the plaintiff appealed.—*Reversed.*

*S. H. Cochran* for appellant.

*Hubbard, Dawley & Wheeler* for appellee.

Ladd, J.—The deceased, Z. W. Hunt, on the day he was killed, was walking on the defendant's track, towards the east, and when on a bridge some eight feet high was struck by a fast passenger train, known as the "Overland Limited," going west. It appears without dispute that when he was first seen by the engineer the train was a mile away, the track being straight for that distance. At that time he was walking on the track west of the bridge, but, before reaching it, stepped to the south side of the track. The engineer's attention from then on was taken by the semaphore at Missouri Valley, and he saw no more of him. But the fireman testified: "When I first saw Mr. Hunt, he was on the south side of the track, about eight or ten feet of the trestle. When I saw him he was walking on the left side towards the train, and he got up on the bridge, and kept walking on the bridge until we hit him. He leaned over the bridge with his face towards us. When I first saw Mr. Hunt, I think the engine was three or four car lengths from him." Both the engineer and fireman estimate the speed of the train at forty or more miles an hour. The bridge was seventy-eight feet in length. One Athy testified that he was standing at a farm house, about a half mile distant; saw the accident; and that Hunt was three-fourths of the way across the bridge, within fifteen or twenty feet of the east end, when struck. This was the only witness fixing the point on the bridge where the deceased was standing at the time. That the defendant owed the deceased no active duty before he was seen on the bridge must be conceded. It could not have been reasonably anticipated that he would go on the bridge in front of an approaching train, until he did so, or indicated in some way such an intention. See *Thomas v. Railway Co.*, 93 Iowa, 248; *Burg v. Railway Co.*, 90 Iowa, 106. But, if Athy is to be believed, he must have walked

sixty feet on the bridge, towards the train, after the fireman had observed him in a place of peril. Conceding the train to have been moving at the rate mentioned by the employes, —though Athy put the speed much lower,—the engine was between six hundred and eight hundred feet from the deceased when the fireman first saw him go on the bridge. If moving but thirty miles an hour, as stated by Athy, it could not have been that far off. True, the fireman estimates the distance at three or four car lengths. But he saw him until the time he was struck, and the jury might have found that to be at the point testified to by Athy. The question, then, arises, could the train have been stopped in time to have avoided the accident? A witness, who had at one time been an engineer, testified that such a train as the one in question might be stopped, when moving at the speed of forty miles an hour, within one hundred yards. This evidence was undisputed. He also gave estimates of distances within which it might be brought to a standstill when moving slower. Whether this evidence is credible cannot be considered in the absence of any controversy concerning it. The appellant makes no claim but that it must be taken as true for the purposes of this case. Had the fireman warned the engineer of Hunt's dangerous situation instantly when he observed him going on the bridge, and the engineer employed every means, consistently with safety, to stop the train, the injury might have been averted. At least the jury might have so concluded from the evidence as it stood when the verdict was directed.

II. It is suggested that the deceased should have jumped from the bridge, or else laid down on the ties. He was sixty-five years old, and it would certainly have been hazardous to have leaped a distance of eight feet to the ice or frozen ground below. It must be said that he was negligent in going on the bridge and in being where he was. He might and ought to have done differently. But this did not excuse the defendant if its employes observed him heedlessly walk out on the trestle-

work, apparently oblivious of the peril of being run down by the approaching train, and if, by the exercise of ordinary care on their part in the application and use of every available means for the protection of life, the injury could have been averted.  They were not permitted to speculate whether he would jump from the bridge, or lie down, or in some other manner get out of harm's way a moment after it became evident that he was insensible of the impending danger, or incapable of providing for his safety.  The moment he went on the bridge, his peril was manifest and imminent, —a warning that he was taking no heed for his own safety,— and the defendant's employes, having this knowledge, were required to exercise reasonable care to avoid a collision. Whether they did so, under the circumstances disclosed, was for the jury to say.  See *Railroad Co. v. Vaughan*, 93 Ala. 209 (30 Am. St., 50, 9 South. Rep. 468) ; *Clark v. Railroad Co.*, 109 N. C., 430 (14 S. E. Rep. 43) ; *Pierce v. Walters*, 164 (Ill. Sup.) 560 (45 N. E. Rep. 1069) ; *Sutzin v. Railway Co.*, 95 Iowa, 304 ; *Remick v. Railway Co.*, 62 Iowa, 167 ; *Railway Co. v. Whipple*, 39 Kan. Sup. 531 (18 Pac. Rep. 730) ; Elliott Railroads, section 1287 ; Shearman & Redfield Negligence, sections 99 and 10.

III.   On the trial a witness was asked what he heard the engineer say at the coroner's inquest, five and one-half hours after the accident, with reference to having seen Hunt, and the distance he was from him at that time.  This was not calling for a part of the transaction, but for an account of it at another time and place, and for this reason was not a part of the *res gestae*.— Reversed.