W. H. DOHERTY, Appellee, v. DES MOINES CITY RAILWAY COMPANY, Appellant.

**Street railways:** NEGLIGENCE: INSTRUCTION.  One about to drive
1  across a street car track is in law required to ascertain, by the
use of his senses, whether it is safe to attempt a crossing; this
question should not be left to the jury.

**Instruction:** LAST FAIR CHANCE.  Where the facts are undisputed
2  that in the night time a street car operated over one street
and a team driven along an intersecting street collided at or
near the intersection and notwithstanding the effort of each,
following discovery of the danger an accident occurs, the doc-
trine of " the last fair chance " has no application; and an
instruction based on such doctrine is erroneous and prejudicial
as not being within the issues.

**Street Railways:** COLLISION WITH VEHICLE: NEGLIGENCE: LIABILITY.
3  Where in the exercise of due care by a motorman the danger
of colliding with a team at an intersecting street might have
been discovered in time to have avoided the accident, the street
car company will be liable for the injury, notwithstanding the
contributory negligence of the driver of the team.

**Future damages:** MISLEADING INSTRUCTION.  An instruction on the
4  question of damage in a personal injury action using the ex-
pression " full, fair and actual present compensation," which
was made applicable to future as well as past damage, is held
to have been misleading.

**Contributory negligence:** SUBMISSION OF ISSUE. Where the plaintiff testified that he looked and discovered no approaching car as he drove upon the crossing, notwithstanding his testimony is strongly discredited by the location and surroundings as shown by the evidence, the question of his contributory negligence was properly submitted.

*Appeal from Polk District Court.*— HON. HUGH BRENNAN, Judge.

MONDAY, DECEMBER 16, 1907.

REHEARING DENIED, MONDAY, FEBRUARY 17, 1908.

THIS is a personal injury action. Plaintiff had a verdict and judgment in the trial court, and the defendant appeals.—*Reversed.*

*N. T. Guernsey,* for appellant.

*Gillispie & Bannister* and *H. E. Spangler,* for appellee.

BISHOP, J.— The accident out of which plaintiff's injury grew occurred on Cottage Grove avenue, in the city of Des Moines. The general direction of the avenue at the place of the accident is southeast and northwest. G street, the general direction whereof is north and south, comes in from the south and terminates at its junction with the avenue. To the west, Twenty-First street — also a north and south street — intersects the avenue. The distance from G street to Twenty-First street is something less than two hundred feet. From Twenty-First street west, the avenue deflects slightly to the south, thus bringing the direction more nearly east and west by six or eight degrees. The defendant operates a double track line of street railway — the motive power being electricity — on the avenue, the east-bound cars using

the south track.   The south rail of this track is about fifteen feet from the street curb.   The accident occurred about half-past nine o'clock in the evening, and it was quite dark at the time.   Plaintiff had driven his team — a span of mules hitched to an ordinary work wagon — north on G street, and, on reaching the avenue, he turned west.   He had not proceeded far when an east-bound car struck his team, and, as a result of the impact, he was thrown out of his wagon and fell upon the pavement.   Negligence on the part of defendant is alleged in several particulars.   It is said that the car was being operated by a careless and incompetent motorman at a high and dangerous rate of speed, greatly in excess of the rate per hour permitted by the ordinances of the city; that no attempt was made by said motorman to slacken the speed of his car as he approached the street crossing; that the motorman failed and neglected to keep a sharp lookout over and upon both sides of the track as he approached the crossing, and that he gave no warning by bell or other signal of the approach of the car.

I.   The ninth instruction given by the court on its own motion is complained of as involving error.   The portion of the instruction which is criticised reads thus:   " It
was the duty of the plaintiff to use his senses in order to ascertain whether or not he could safely drive upon the street-car tracks upon Cottage Grove avenue at the time he did.   It was his duty to do what an ordinarily careful and prudent man would do under like circumstances in order to ascertain whether it was safe to drive upon these tracks where the plaintiff attempted to drive upon them.   And in determining whether ordinary care would require plaintiff to ascertain whether he could cross safely by the use of his senses of sight and hearing, you will take into consideration whether the plaintiff knew, or in the exercise of ordinary care should have known, that the car was approaching; whether he knew, or in the exercise of ordinary care should have known, that

1. STREET
RAILWAYS:
negligence:
instruction.

a car might be approaching at any time, the rate of speed at which the car was running, and whether he could have ascertained by looking just before he went upon the track whether it was safe to drive upon it; whether an ordinarily careful and prudent man would have so looked; and all the other facts and circumstances disclosed by the evidence bearing upon this question."

That the propositions stated in the first two sentences of this instruction are correct in law is not open to doubt. But from there on the instruction is open to attack as confusing, to say the least. It was not for the jury to determine whether ordinary care required of plaintiff that he ascertain by the use of his senses if it was safe in reason to attempt a crossing. That he was bound to do in law, as the jury was correctly told in the initial sentence of the instruction. This, of course, in view of the evidence which made it appear that he was knowingly on the tracks, and that he was familiar with the operation of cars thereover. Under the circumstances here disclosed, the duty of plaintiff to use his senses was absolute, and the only question which should have been given to the jury for debate and answer was whether, in view of the known situation and the then present conditions disclosed to him through the medium of his senses, he might in the exercise of ordinary care attempt a crossing. *Stanley v. Railway,* 119 Iowa, 526.

II. In the tenth instruction the jury was told that plaintiff could not recover if it found that his own negligence contributed in any degree to his injury. The instruction then proceeds: "But you are instructed that although you might find the plaintiff was negligent in going upon the tracks of the defendant at the time and in the manner he did, if you further find that the defendant's motorman saw the plaintiff upon said track in a position of danger in time to have avoided the accident and injury, or by the use of ordinary care and caution he should have seen plaintiff, and that he negligently

2. INSTRUCTION: last fair chance.

failed to stop said car, and said failure was the direct and proximate cause of the accident and injury to plaintiff, if you so find, then your verdict will be for the plaintiff." In view of the record before the court, that portion of the instruction which we have quoted should not have been given. Plaintiff detailed the circumstances of the accident as follows:

As I approached the avenue, my team was walking along at a good walk. When I got probably twenty or thirty feet south of the track, that was my first view that I could get west to look and see whether there was a car coming. I had to go west, and naturally looked that way first. Seeing nothing coming from the west, I looked east and there was nothing coming. About the time I looked around to get my course, there was a street car into me or almost into me. I started to pull my team to the south, and did not get them started to swing until I saw it was going to come into me, and I stood up in the wagon and was going to jump out, but before I had time to jump they were into me.

The motorman in charge of the car testified that after passing Twenty-First street, and as he approached G street, he saw the mules coming out from that street; that they were just entering upon the pavement of the avenue, and were about two car lengths, or eighty feet away. " I rang the bell about as hard as I could. I used all the efforts I could to stop the car." The only other witness whose testimony had material bearing on the subject was one called by plaintiff. He testified that at the time of the accident he stood on the north side of the avenue, a little east of G street. " The accident occurred about the west side of G street just as the team was turning the corner." And on cross-examination he testified that the car began to slow up before it struck the team. " I think the motorman set the brake as quick as he could after the team appeared on the avenue."

In this situation of the evidence, there was no room for application of the doctrine of "the last fair chance." That doctrine can have application only in the cases where it is made to appear that the negligence of the defendant, culminating in the accident, arose after the discovery of the position of danger in which plaintiff by his own negligence had placed himself. This is upon the theory that under such circumstances the negligence of defendant, and not the prior act of negligence of plaintiff, must be regarded as the proximate cause of the accident. Thus, in *McDivitt v. Railway*, 99 Iowa, 141, it appeared that the plaintiff had driven a covered wagon on the tracks of the defendant company, and this he did without looking for approaching cars. A car coming up from behind struck his wagon, throwing it over, and he was caught in the wreckage. The motorman in charge of the car sought to back his car away, but in making the attempt he forgot to reverse the electric current, and the result was that the car started forward, pushing the wagon with plaintiff inside along the pavement, and out of this came the injury of which complaint is made. Such appearing to be the facts, it was held that the negligence of plaintiff in driving upon the tracks without taking note of the approaching car did not preclude a recovery. And the books are replete with cases in which the doctrine has been given application. But here we have a case in which without dispute the facts are that in the nighttime a street car being operated over one street and a team being driven on an intersecting street come into collision at or near the intersection, and this notwithstanding the efforts — following discovery — of each driver to avoid such collision. If in the happening of such an accident there be negligence, in the very nature of things it must be primary in character; there is no room for a finding that either was negligent as to the other after the collision became imminent. It is fundamental in our law of practice that the charge of the court must be confined to those

matters on which an issue has been joined — arising either in pleading or out of the evidence. Accordingly, the giving of an instruction not pertinent to some issue in the case is error. And the error will be deemed prejudicial unless the record as a whole shows that in reason no prejudice could have resulted therefrom. *Wall v. Railway,* 89 Iowa, 193.

No conclusion against prejudice can be drawn from the record before us. The jury may very well have understood from the giving of the instruction that out of the evidence it was possible to favor plaintiff with a verdict, notwithstanding that his own negligence was apparent, and, for that matter, the primary and efficient cause of the accident.

Counsel for appellant further insists that conceding the issue to have been such as to call for an instruction presenting the rule of the last fair chance, still there was error **3. STREET RAIL-** in that the instruction as given went beyond **WAYS: collision** **with vehicle:** the rule and told the jury in substance that **negligence:** **liability.** negligence on the part of plaintiff, if found, would not preclude a recovery by him, if further found that the motorman with the use of ordinary care and caution should have discovered the danger to plaintiff in time to have stopped the car, etc. It is no doubt true by the great weight of authority that in the case of steam railways, operated over private ways, there can be no recovery for injuries sustained by one negligently exposing himself to danger, except on proof that after being actually discovered the railway employés might have stopped the train, and that they negligently failed to do so. As the proposition is put in some of the cases, the injury inflicted, to be recoverable for, must appear to have been wanton in the sense that the person in charge of the train, after being made aware of the danger, and having the means at hand by the use of which he might have prevented the accident, negligently failed to adopt or make use of such means. But in this State, as in many of the other States, the rule applicable in steam railway cases is departed from when dealing with

accidents arising out of street railway operation, to the extent at least of holding that proof of actual knowledge of the position of danger of the party who suffers injury is not in all cases, and *ex necessitate,* required.  On the contrary, it will be sufficient to warrant a finding for liability if it shall be made to appear that in the exercise of due care the position of danger might have been discovered in time to have avoided the calamity.  *Doran v. Railway,* 117 Iowa, 442; *Barry v. Railway,* 119 Iowa, 63.  The reasons for the rule will be found stated in the opinions written by Mr. Justice McClain, in the cases thus cited, and we need not at this time enlarge upon what is there said.  Cases arising elsewhere and holding to the same view will be found cited in 2 Thompson on Negligence, section 1467 *et seq.,* and in Supp. to that work, page 278.  .

III.  The instruction given the jury on the subject of the measure of damages is also criticised, and we think with show of reason.  Reduced to the smallest compass possible, it reads thus:  Plaintiff is entitled to recover, if at all, such damages as are shown to have been sustained by him as the proximate result of the injury alleged.  The amount of his recovery, if entitled to recover, " will be a full, fair, and actual present compensation for the injury in fact sustained, which is alleged in the petition and proved by the evidence, including injury in the future, if you find that his injuries are permanent as shown by the evidence."  " You will also take into account the physical pain and mental anguish of plaintiff, as shown, by reason of the injury alleged.  If you find that his injury will continue or is permanent, you will consider the probable duration thereof and allow him for such physical pain and mental anguish in the future as you find he will hereafter endure.  You will further consider the wages he was earning prior to the accident, the expense incurred for doctors, for hospital care, his loss of time caused by the accident, and that may, if you find that he is permanently injured, follow in the future.  The law

can give no rule by which to accurately measure plaintiff's
damages as to mental anguish, pain and suffering. The
amount of his recovery must of necessity be left to your
sound judgment and discretion in the light of all the facts
and circumstances disclosed in evidence."

Counsel for appellant does not deny but that pain and
anguish — past and future — time lost, and expenses in-
curred, are proper as elements of damage in cases such as
this. He argues, however, that in all likelihood the jury
may have been misled into or found warrant in the instruc-
tion as given for an assessment for double damages; that is,
that they may have understood, in view of the form of words
used, that the matters enumerated constituted independent
and additional elements of damage, for which a special re-
covery as to each could be had. We are not prepared to
express opinion that the conclusion thus contended for should
be reached. The thought intended to be conveyed by the
instruction undoubtedly was that the matters referred to,
as far as established by the evidence, were proper for con-
sideration in arriving at the amount of damages to be
awarded. And we think it probable that such was the under-
standing acquired by the jury. It remains to be said, how-
ever, that the instruction cannot be commended for its
method of arrangement and form of statement. And this
will be sufficient to suggest the advisability of a revision of
the instruction in the event of a retrial of the case.

The instruction is further criticised because of the use
of the expression " full, fair and actual present compensa-
tion," etc. And as this is made applicable by the language
which follows to the damage to accrue in the
4. FUTURE
DAMAGES:
misleading
instruction.
future as well as to that already accrued,
we think the expression falls short of a clear
and adequate statement of the law. And it is not materially
aided by the remaining language of the instruction. As to
the damages for physical pain and mental anguish, it is true,
as said in the instruction, that there can be no fixed rule

for measurement.   The amount must be left to the sound judgment and discretion of the jury.   But the jury should be told that in respect to future pain and anguish, recovery must be based upon an impartial, approximate estimate of the sum which being presently paid will afford reasonable compensation.   As to the future loss of time or diminished earning capacity, recovery must be limited to such a sum as being presently paid will afford reasonable compensation; that is, make recompense to the injured person for the property loss which he may fairly be expected to sustain in the future.   Material to this, of course, is the evidence as to his previous condition — physical and mental — his education, habits of industry, etc.   Reverting to the instruction as given, we are not quite sure that we catch in an appreciative way the thought intended to be conveyed by " full, fair and actual present compensation."   It is probable that the court had in mind the correct rule, but in the hurry of a jury trial omitted to employ a form of words adequate to correct expression.   Be that as it may, however, if the instruction was calculated to mislead or confuse the jury, and we think it was, it must be condemned.

IV.   At the close of the evidence counsel for defendant presented a motion for a directed verdict based on the ground that the evidence established contributory negligence on the part of plaintiff, and this motion was overruled.   A request for instruction addressed to the same point was handed up and refused.   It is argued before us at considerable length that here was error.   The argument is based upon the fact contention that plaintiff could have seen, and hence should have seen, the coming car, on which a bright headlight was burning, in time to have stopped his team before entering upon the track, and thus have avoided the collision.   And in view of the location and surroundings as shown by the evidence, the argument is not without persuasive force.   But plaintiff says that as he approached the avenue he looked to ascertain

5. CONTRIBUTORY NEGLIGENCE: submission of issue.

if the track was clear, and that as he drove on the pavement he saw no car and heard no warning bell or signal. As disposed at present, we must decline, as did the trial court, to pass upon the probability of his story. It was not error to submit the same to the jury.

Other matters discussed in argument are either devoid of merit, or are not likely to arise upon a retrial of the case. For the errors pointed out, the judgment is reversed, and the case will be remanded, for a new trial.— *Reversed.*