ARTHUR JARVIS, Appellee, v. C. E. STONE et al., Appellants.

No. 41614.

MAY 2, 1933.

Hicklin & Hicklin and Putnam, Putnam, Langdon & Fillmore, for appellants.

Seerley, Clark & Hale, and H. O. Weaver, for appellee.

CLAUSSEN, J.—On the 14th day of May, 1931, plaintiff was riding, with a fellow employee, in a truck, hauling a trailer laden with corrugated culvert tubes. One end of the tubes rested in the truck and the other was carried on the trailer. The load was seven or eight feet high, measured from the road. They were traveling westward on a straight, level stretch of road about three miles west of Wapello. The stretch of highway was surfaced with gravel, and the roadway was about thirty-seven feet in width. A short time prior to the accident one of the wheels of the trailer came off. It

was put back on and fastened somewhat insecurely. The driver of the truck stopped at the place where the accident occurred to examine this wheel. Plaintiff and the driver were riding in the seat of the truck, which was not equipped with a cab. The truck was stopped very close to the north shoulder of the roadway. When it came to a stop, the occupants alighted. The driver inspected the wheel, and then gave some attention to the floor boards of the truck. The plaintiff alighted on the right side of the truck, and went around the front of the truck, and continued southerly upon the roadway. In the meantime the defendant Stone was following the truck, driving a car owned by his fellow defendant. As he passed the truck, the plaintiff received the injuries of which he complains. These circumstances have been very briefly set forth, for the reason that they will require elaboration in the course of the opinion.

I. At the close of plaintiff's testimony, and at the close of all the evidence, a motion for a directed verdict was made by the defendant, upon the ground, among others, that the plaintiff was guilty of contributory negligence. We shall briefly review the evidence giving to it the interpretation most favorable to plaintiff in accordance with well-established rules.

The road was straight and level in the vicinity of the accident. There were no obstructions to view. The evidence discloses that, eastward from the place of the accident, was an unobstructed view of a mile or two of the road. The tubes being hauled were twenty feet long, so the length of the truck and load must have been not less than twenty-five or thirty feet. The driver of the truck, although engaged with the floor boards of the truck, says the Stone car was traveling at the rate of thirty-five miles per hour, as it passed the truck, and this is the highest rate of speed given to it. He says the car was within three or four feet of the truck as it passed. Plaintiff's story of what happened is most favorable to him, and for the purpose of this discussion it will be taken as true. He says:

"I got out and started around the front end of the truck. I looked toward the rear end of the trailer just as I stepped from the truck. At that time I couldn't see so very much of the road from the position I was standing in, but I could see the trailer. After I got out of the truck and looked back toward the back end I started to the front end and around the truck. I was not running. I was walking at the usual gait that I always take. I had taken my watch

out of my pocket coming along the north side of the truck and looked at it right at the northwest corner of the truck. That would be in front of the right fender. I put my watch back in my pocket. After replacing the watch in my pocket I looked down the road in a westerly direction. I proceeded on to the south and about the time that I was just taking about one step past the front end of the truck I stopped and looked at the road in both directions."

Plaintiff fixes the place where he was when he looked up and down the road as being from two to four feet west and the same distance south of the front end of the truck. From this point he says he walked toward the rear end of the truck—the direction from which the Stone car was coming—and had taken one or two steps when he was struck by the car. Asked whether, as he looked up and down the road from this point, he observed a car approaching, plaintiff said:

"No. There was no car coming in either direction nor going in either direction that I could see."

The testimony of other witnesses is that the Stone car was not traveling so fast; that plaintiff did not stop and did not look; that he was half running across the road; that the Stone car was five or six feet from the truck as it passed; that the driver of the car had diverted it southerly before the impact; and that plaintiff ran into the side of the right front fender of the car. But for the purpose of the present discussion such matters are given no consideration, we will take the case in the light most favorable to plaintiff.

In this situation it is not open to question but what, if plaintiff had looked and given heed, as he stood some two or four feet west and south of the truck, the accident would never have happened, and, if after he had so looked he had given any heed to his surroundings, the accident would never have happened, for he walked directly toward the approaching car. From the point where he looked and started eastward, the car would have been in view at a distance equal to the length of the loaded truck, something over twenty-five feet, and the additional distance during which the car angled over to get into a position on the road to pass the truck, and in order that the overtaking car would not be in view, at whatever distance it may have been, it would be imperative that it be immediately to the rear of the truck and in very close proximity

thereto. Citation of cases is unnecessary upon the proposition that plaintiff was guilty of contributory negligence as a matter of law.

II. It is urged that the record contains no evidence that negligence, on the part of the defendant driver, was the proximate cause of the injuries complained of. This assignment is argued on the theory that the driver of the car was not bound to assume that appellee was present, hidden from view by the load of tubes, or that he would dart from a place of safety into the path of the car, and that "the act of the pedestrian is, under such circumstances, the proximate cause of the accident; and negligence of the driver, if any, is not material." The last part of the preceding sentence is quoted from appellant's argument. In view of this attempt to restate the assignment of error, the argument is in reality addressed to the question whether contributory negligence on the part of appellee was not the proximate cause of the injuries, rather than to the question presented by the assignment of error, namely, Does the record make out a jury question as to whether the driver of the car was negligent?

In considering this question, the evidence must be given its greatest weight in favor of appellee. The traveled portion of the road-way was thirty-seven feet in width. The truck was parked very close to the north side of the road, inferentially leaving in the neighborhood of thirty feet of the roadway unobstructed to the south of it. Still the car was driven within two to four feet of the truck in passing, at the rate of thirty-five miles per hour. There appears to have been no reduction of the speed of the car. The defendant driver testified in part as follows:

"I noticed it (the truck) was going slow at the time I turned out to go around him. I didn't know that he had stopped. I knew he had stopped when the man came out in front of it.

"Q. You weren't paying much attention to them? A. I wasn't paying attention to the truck, no, sir.

"Q. It never occurred to you that a man might be around that truck, standing around that truck, that didn't occur to you at all? A. I gave him plenty of room the usual distance. * * * I did not observe the driver's hand held out as a warning that he was going to stop.

"Q. You weren't looking? A. Not after I got out in the clear. I paid no more attention.

32

"Q. And when you speak of being in the clear you mean that you were six feet away? A. From the truck, yes. * * * I had not sounded my horn as I approached the truck."

Among the allegations of negligence were the following:

"In failing to keep a proper look out.
"In failing to give any warning of his approach.
"In driving said motor vehicle in an excessive and dangerous rate of speed."

It is understood, of course, that there was testimony of a much different character in the case. We are not now trying the fact question. The picture portrayed of necessity favors the plaintiff, but it leaves no doubt but what a jury question was presented by the record concerning the negligence of the defendant driver.

III. In the instructions, the court told the jury that it was the duty of a driver of a car, when approaching and passing another vehicle, to reduce the speed of his vehicle to a reasonable and proper rate. Complaint is made of this instruction upon the ground that the plaintiff had not pleaded a failure to reduce the speed of the car, as negligence. It has been noted that plaintiff alleged that the car was driven at an excessive and dangerous rate of speed. In submitting this ground of negligence, it was proper for the court to advise the jury of the duties of the driver of the car in relation to its speed in passing the truck. The allegation that the car was driven at a dangerous and excessive speed is certainly one way of stating that the speed of the car had not been reduced to a reasonable and proper rate.

IV. The court further instructed the jury as follows:

"If the jury find from a fair preponderance of the evidence that the defendant C. E. Stone upon the occasion in controversy in approaching the plaintiff and the vehicle in which the latter had been riding upon said highway, drove his automobile at a higher rate of speed than ordinary care and prudence would have dictated under the existing conditions, and that he failed to control and check such speed when nearing the standing vehicle with which the plaintiff was connected, and that as the direct result of such failure to exercise ordinary care the plaintiff, while in the exercise of ordinary care for his own protection was run down and injured as claimed by him, you should then find the plaintiff entitled to

recover the damage sustained by him as the immediate and direct result of the said negligence of the said defendant."

This instruction is the subject of two objections. The first is that the instruction is improper, in that plaintiff had not pleaded a failure to reduce speed, as negligence. This objection is disposed of by what has been said in the preceding division of this opinion. The second is that the record does not support the submission of the question of speed as negligence on the part of the defendant, in that speed, whatever it may have been, was not the proximate cause of the accident. We are of the opinion that the assignment of speed as negligence was sufficiently supported by the record to warrant its submission, in the absence of contributory negligence. It is difficult to isolate speed, in an automobile accident case, so that it becomes a separate and distinct ponderable element, and especially is this true where contributory negligence is present. The fact that accidents have happened at every conceivable rate of speed tells but one story, and that is that the propriety of any rate of speed depends upon all the surrounding facts and circumstances, and this means, not alone the extraneous facts, but the vigilance of the driver and his care in relation to details other than speed, such as the warnings given of his approach and the place selected by him in the highway for the operation of the car. The court properly associated the element of speed with the other facts and circumstances in the case, and was not in error in respect to the submission of this ground of negligence.

The instruction is subject to the criticism that it required the driver of the car to control *and check* his speed when nearing the truck. It is, of course, obvious that the statutes of this state require no more than that the driver of a car shall overtake and pass another car at a reasonable rate of speed. It does not contemplate that one who is proceeding at a rate reasonable under all the facts and circumstances shall reduce his speed to a rate which is less than a reasonable rate of speed, when passing another car.

V. Complaint is made that the court improperly submitted the assignment of negligence in relation to the failure of defendant to maintain a proper lookout. What has been said under division II of this opinion disposes of this contention. The testimony of the defendant furnished abundant support for its submission.

VI. It is urged that the court was in error in instructing

the jury that a violation of the law of the road was negligence, without telling the jury of the right of the defendant to excuse such violation. There was no occasion to so instruct the jury, for the reason that no excuse was in evidence. The record contained absolutely no evidence of any fact or circumstance tending to excuse any violation of law. This is in exact accord with the holding of the court in Kisling v. Thierman, 214 Iowa 911, 243 N. W. 552.

■ VII. The court instructed the jury that, if the defendant saw plaintiff, or in the exercise of ordinary care could have observed plaintiff, upon the highway, and failed to use such means as were within his power to avoid injury to plaintiff, "such failure to exercise ordinary care" would constitute negligence for the consequences of which he would be responsible so far as the damage was suffered by "plaintiff while himself in the exercise of ordinary care and prudence and not negligent in a manner to contribute to the said collision and damage." Complaint is made of this on the ground that by the instruction the court submitted the case under the doctrine of the "last clear chance," which it is said was erroneous, in that the pleadings and the record do not make out a case of that character. The instruction is not vulnerable to this complaint, because it does not submit the case on that theory. The instruction deals with the duty of the driver of the car to maintain a lookout and to discover the defendant on the highway and to avoid injuring him. Recovery under the doctrine of "last clear chance" presupposes contributory negligence, and the actual discovery of the plaintiff in the position of peril. The instruction permitted recovery in the event defendant saw, or in the exercise of reasonable care should have seen, plaintiff and failed to use the means at his disposal to avoid striking plaintiff *if* the plaintiff was free from contributory negligence. Davidson Bros. Co. v. City Railway Co., 170 Iowa 467, 153 N. W. 79, Ann. Cas. 1917C, 1226, is in point on this question.

The instruction cannot be approved on account of the statements in relation to the duty devolving on the driver of the car upon discovering, or at the time he should have discovered, the presence of the plaintiff on the road. The defendant was not obligated to "adopt such means as were within his power to check the progress of his vehicle and avoid collision with the plaintiff." He was required to use ordinary care. It cannot be said as a matter of law that a failure to use all means within the power of the driver to check the car was a failure to exercise ordinary care.

██ VIII. Upon the trial of the case, plaintiff was permitted to introduce an order of court appointing a temporary guardian for him, an order authorizing the temporary guardian to execute application for payment of workmen's compensation, an order authorizing the temporary guardian to employ counsel to investigate the accident, and an order discharging the temporary guardian. The orders in relation to the application for workman's compensation and for the employment of counsel were clearly irrelevant to any issue on trial. Without entrenching in any manner on the troublesome question whether a final adjudication of mental unsoundness is a judgment in rem in such a sense that it is admissible in favor of the individual concerning whom it was rendered, and against a total stranger to the proceedings in which it was rendered, we have no hesitancy in holding that the order appointing a temporary guardian was not competent evidence of plaintiff's mental condition and was irrelevant to any issue raised by the pleadings, and the same is, of course, true of the order discharging the temporary guardian. In the order discharging the temporary guardian, the court also directed a trustee, appointed to collect compensation payments, to pay over funds collected by him to plaintiff. Appellee contends that the fact that plaintiff received compensation is evidence tending to establish that he was injured. It is obvious that payment of compensation is the act of a third party, and is incompetent to establish the fact of injury.

██ IX. Under the instructions the jury were required to find for or against both defendants, and complaint is made of this. The petition alleges that the car was owned by the defendant Blasi, and was driven by the other defendant, with the consent of the owner. These allegations are denied by the answer. Consequently, it was a question of fact whether the car was being driven with the owner's consent. The record contains nothing which would warrant the court in assuming it to be a fact that the car was being so driven. In this situation a verdict could have been returned against Stone and for Blasi, and it was error for the court to limit the jury to finding a verdict common to both defendants.

Other errors are assigned which need not be considered.

For errors pointed out, the judgment must be, and is, reversed.

KINDIG, C. J., and EVANS, STEVENS, ALBERT, and DONEGAN, JJ., concur.