DORIS N. GROVES, Administratrix, Appellee, v. CITY OF WEBSTER CITY, Appellant.

No. 43547.

NOVEMBER 24, 1936.

REHEARING DENIED MARCH 12, 1937.

Sterling Alexander, for appellee.

E. P. Prince, City Attorney, and Miller, Miller & Miller, for appellant.

KINTZINGER, J.—The plat embodied herein will assist in understanding some of the facts involved in this case. Second Street, also used as Highway No. 20, in Webster City, Iowa, runs east and west and is 52 feet wide; Des Moines Street runs north and south across Second Street and is 42 feet wide. Plaintiff's intestate, while walking across the south half of the intersection of Des Moines and Second Streets was struck by one of

defendant's trucks, and received severe injuries, resulting in his death. The south half of Second Street is 26 feet wide. It was along this portion of Second Street that the accident in question occurred at about 6:40 a. m. on November 3, 1934, at which time it was raining quite hard. At that time decedent wore a long overcoat and carried an umbrella pulled well down over his head and shoulders.

The block west of the intersection where the accident occurred had been barricaded from traffic, and a large "road closed and detour" sign was placed against the traffic light in the center of the intersection, and traffic had been detoured around the block for two or three weeks. The morning in question was dark, but the street lights were lit and several red lights were placed upon the barricade extending half way. across Second Street, about 100 feet west of the intersection in question. Notwithstanding. the barricaded street, the defendant's truck passed over the street around the barricade, turned into the south half of the street almost to the sidewalk line, and proceeded easterly thereon.

It may be conceded, for a discussion of this case, that decedent was guilty of contributory negligence in passing over the street in front of the oncoming truck. The petition, however, alleges that defendant's driver knew of decedent's perilous position, and after knowing of the same, could have avoided the accident by the exercise of ordinary care thereafter, under the doctrine of last clear chance.

At the close of the evidence, defendant's motion for a directed verdict was overruled. The case was submitted to the jury and a verdict returned for plaintiff. A motion for a new trial was overruled, and judgment entered, from which defendant appeals.

Plaintiff's intestate was first observed by the truck driver "in the center of the south half of the intersection directly south of a stop and go sign," in the center of the intersection, and about one hundred feet east of defendant's truck as it passed the barricade. Decedent was following a slightly northwesterly direction, and was walking towards defendant's truck. He continued in this direction about ten steps, during which time the truck traveled to within fifty feet of the intersection. Here the decedent stopped and sort of tramped around in the intersection, and then took about 6 or 7 steps toward the southwest corner of

A. TRAFFIC LIGHT IN CENTER OF INTERSECTION.
B. "ROAD CLOSED" AND "DETOUR" SIGN.
C. TRUCK PASSING AROUND BARRICADE.
D. POSITION OF DECEDENT WHEN FIRST SEEN BY TRUCK DRIVER.
E. POSITION OF DECEDENT AFTER TAKING 6 OR 7 STEPS TOWARD SOUTHWEST CORNER.
F. POSITION OF TRUCK AFTER DECEDENT HAD TAKEN 6 OR 7 STEPS TOWARD CORNER.
G. AUTOMOBILE APPROACHING FROM THE SOUTH ON DES MOINES STREET.

the intersection, and about fifteen feet therefrom. All of this time it was raining and decedent had an umbrella over his head pulled down over his shoulders. Defendant's driver testified that decedent never took the umbrella off of his head and shoulders, or looked out. Defendant's driver took him for an old lady, as he had on a long coat and was walking stooped over. At that time the truck was almost to the westerly sidewalk line of Des Moines Street. While still in the intersection decedent again turned around and walked in a northerly direction towards the oncoming truck. The truck driver said that he did not see the decedent retracing his steps until he came to within two feet from the south side of the front end of his truck. During all of this time decedent was in the traveled portion of the south half of the intersection, and walking directly toward the path of the oncoming truck, and while so doing he was in a perilous position.

I. Appellant contends that the truck driver did not become aware of this perilous position until he saw decedent about two feet from the front of his truck, when it was impossible to stop in time to avoid the injury. Appellant, therefore, contends that the court erred in failing to direct a verdict in its favor because of decedent's contributory negligence and because the doctrine of last clear chance does not apply in this case.

It may be conceded that if defendant's driver did not become aware of decedent's perilous position until he came within two feet of the front end of the truck, he would not have had sufficient time within which to swerve or stop his truck in order to avoid the accident. Defendant's driver *said* he took his eyes off of the decedent after he had taken 6 or 7 steps toward the southwest corner of the intersection, and that he did not see him again until he came within two feet of the front end of the truck.

If, however, the physical facts and circumstances show that the truck driver did see the decedent in a perilous position in the intersection, as he approached the front end of the truck, in time to have avoided the accident, then the question of defendant's negligence under the doctrine of last clear chance was for the jury.

The facts show that the decedent was at all times in the traveled portion of the south half of the intersection on Second Street, and on that portion of the street along which defendant's truck was traveling. Defendant's truck was traveling east along the center of the south half of Second Street on which decedent

was walking and generally toward the position occupied by decedent. At the time the truck reached the intersection, *the decedent was not over twenty-five feet away, and in a direct line with a car on Des Moines Street approaching the southeast corner of the intersection from the south, which the driver saw as he looked south for traffic on Des Moines Street.*

Defendant's driver testified that as he approached and while in the intersection, he looked both north and south *several* times for oncoming traffic. It was early in the morning, and the only vehicular traffic on the street was one automobile which defendant's driver saw about a hundred feet south of the intersection on Des Moines Street, just south of and near the south-east corner of the intersection. There was evidence from which the jury could find that at the very time defendant's driver saw this car, the decedent was in the intersection *directly in the driver's line of vision between the front end of the truck and the car on Des Moines Street.* It is, therefore, clear that the jury could have found from the physical facts and circumstances that the defendant's driver must have seen the decedent in a perilous position on the roadway in front of his truck. The south half of the intersection is only 26 feet wide. As the truck was proceeding easterly in the center of the south half of the intersection, there was not more than ten feet between the south side of the truck and the sidewalk. Decedent was within that space ahead of the truck, and easily within the vision of the headlights thereon. The evidence tends to show that at the time of the accident, the truck was traveling at such a low rate of speed, that it could have been stopped within a few feet. There is no claim that the decedent *suddenly* retraced his steps or *suddenly ran or jumped* into the path of the truck. There was no obstruction between the truck and the car approaching the southeast corner of Des Moines Street at the time decedent was walking toward the truck in the intersection; and no reason is given, and no claim made that the driver's attention was diverted or his vision obstructed at that time. The headlights on the truck were lit, there was a lighted street lamp on the corner, and the truck was not over twenty-five feet away, and on the same side of the street on which decedent was walking.

It is our conclusion that there was sufficient circumstantial evidence in this case from which the jury could find that decedent was in plain view of defendant's driver from the time he

was first observed on the south half of the intersection in question until he was struck, and that he was within the driver's vision when he looked ahead and toward the south several times.

The evidence tends to show that the driver knew from decedent's actions that he was confused when he stopped and tramped around on the intersection and when he turned toward the southwest corner. At that time it was raining hard and it appeared to the driver that the decedent was a stooped over old woman, although he was, in fact, a man over eighty years old. After taking the 6 or 7 steps, the driver said he took his eyes off of decedent. At that time the *decedent was still in the traveled portion of the south half of the road along which defendant's truck was proceeding*, and there was evidence tending to show that he was directly in the line of the driver's vision between the front end of the truck and the car approaching the intersection from the south. The evidence also tends to show that the truck was traveling at such a low speed that a jury might well find that its course could have been changed or the truck stopped in time to avoid the accident.

■■■ Although it be conceded that decedent was guilty of contributory negligence in not observing the truck approaching the intersection from the west, plaintiff's action is based upon the doctrine of "last clear chance". This doctrine presupposes negligence on the part of decedent, Lynch v. Des Moines Ry., 215 Iowa 1119, 245 N. W. 219; Jarvis v. Stone, 216 Iowa 27, 247 N. W. 393, and proceeds upon the theory that notwithstanding his negligence, if the defendant had knowledge of such negligence and of the peril in which the decedent placed himself, it was defendant's duty, after having knowledge of such danger, to stop his car and avoid the accident, if, in the exercise of ordinary care, that could be done thereafter. The doctrine of last clear chance refers to "negligence after negligence. The theory of it is that the later or last negligence becomes the proximate cause."

Appellee contends that after the defendant's driver became aware of decedent's perilous position, he had reasonable time in which to have avoided the accident by the exercise of ordinary care, but failed to do so.

Appellant cites several cases under which it strenuously contends that there is no liability herein, and in support of such contention cites: Spaulding v. Miller, 216 Iowa 948, 249 N. W.

642; Wilson v. Illinois Central Ry., 150 Iowa 33, 129 N. W. 340; 34 L. R. A. (N. S.) 687; Ryan v. Trenkle, 199 Iowa 636, 200 N. W. 318; Nielson v. Yellow Cab Co., 130 Neb. 457, 265 N. W. 420; Curtis v. Pac. Elec. Ry. Co., (Cal. App.) 59 Pac. (2d) 890, and other cases.

In these cases the evidence shows that the person injured had left the path of danger, and then suddenly changed his course, and *suddenly ran or jumped in front of the oncoming vehicle*. No such element was present in this case. There was no testimony tending to show that the decedent *ran* or *jumped* in front of the oncoming truck. On the contrary, the evidence shows that the decedent appeared to be an old person, stooped over, with an umbrella pulled down over his shoulders, and walking slowly in a confused manner, on the same side of the intersection with the approaching truck, and directly within the vision of its headlights. The street lights were also lit, and as hereinbefore indicated, the jury could find that the decedent was in a direct line of the driver's vision only a short distance in front of his truck.

The doctrine of last clear chance applies only where defendant has actual knowledge of plaintiff's peril, and where after acquiring such knowledge, could have avoided the injury by the exercise of due care, and fails to do so. Jarvis v. Stone, 216 Iowa 27, 247 N. W. 393; Hogan v. Nesbit, 216 Iowa 75, 246 N. W. 270.

Where a defendant has knowledge of a person's perilous position in a reasonably sufficient time, so that by the exercise of ordinary care, after discovering a person's perilous position, the injury could have been avoided, then the doctrine of last clear chance applies. Purcell v. R. R. Co., 109 Iowa 628, 629, 80 N. W. 682, 77 Am. St. Rep. 557; Kelly v. R. R. Co., 118 Iowa 387, 390, 92 N. W. 45; Barry v. R. R. Co., 119 Iowa 62, 93 N. W. 68, 95 N. W. 229; Doherty v. R. R. Co., 137 Iowa 358, 114 N. W. 183; Bruggeman v. Illinois Central Ry., 147 Iowa 187, 123 N. W. 1007; Ann. Cas. 1912B, 876; Carr v. Inter-Urban R. Co., 185 Iowa 872, 171 N. W. 167; Williams v. Mason City & Fort Dodge Ry., 205 Iowa 446, 214 N. W. 692; Robertson v. Carlgren, 211 Iowa 963, 234 N. W. 824; Lynch v. Des Moines Ry., 215 Iowa 1119, 245 N. W.219.

In Bruggeman v. Illinois Central Ry., 147 Iowa 187, loc. cit. 204, 123 N. W. 1007, 1013, Ann. Cas. 1912B, 876, this court said:

"In the application of that doctrine [last clear chance] it is not necessary to find that the negligence of the plaintiff had ceased to operate before the accident occurred, and that, if it had ceased to operate, the defendant with knowledge of plaintiff's danger due to his own negligence, had failed to take reasonable precautions to avoid injury to him. It was enough to call for the application of that doctrine that the defendant's employees knew of plaintiff's danger in time to have avoided injury to him in the exercise of reasonable care, even though he was negligent in putting himself in a place of danger, and continued to be negligent in not looking out for his own safety. * * * There is general agreement in the authorities that, where an engineer actually sees a person in a position of danger, and then fails to do what he reasonably can to prevent an accident, the railroad company is held responsible for the resulting injury, irrespective of the question of contributory negligence. If just before that climax only one party had the power to prevent the catastrophe, and he neglected to use it, the legal responsibility is his alone. * * * But there was enough testimony in this case to take the question to the jury as to whether or not the defendant might not have prevented the injury, although the plaintiff was negligent down to the very time of the collision. * * * But if defendant discovered plaintiff's negligence and his peril in time to have avoided the injury, and did not take the necessary means to do so, then the doctrine does apply in full force; for in such cases the defendant has the last opportunity of avoiding the collision."

In Carr v. Inter-Urban R. Co., 185 Iowa 872, loc. cit. 879, 171 N. W. 167, this court said:

"And if it appears from the evidence that * * * [the motorman] had a clear, unobstructed view of the track, the jury may infer * * * that he in fact saw the injured person in a position of peril.".

The defendant's knowledge of plaintiff's perilous position in time to avoid the injury by the exercise of ordinary care after discovering such perilous position may be shown by circumstantial evidence. Williams v. Mason City & Fort Dodge Ry., 205 Iowa 446, 214 N. W. 692; Lynch v. Des Moines Ry., 215 Iowa 1119, 245 N. W. 219.

In Williams v. Mason City & Fort Dodge Ry., 205 Iowa 446, loc. cit. 454, 214 N. W. 692, 695, we said:

"The legal rule is that the train operator in charge must know the 'peril' of appellee, in order to fix liability upon appellants under the doctrine of 'last clear chance;' *yet such knowledge and the time the same is acquired may be proven by circumstantial, as well as direct, evidence.*" (Italics ours.)

In Lynch v. Des Moines Ry., 215 Iowa 1119, loc. cit. 1120, 245 N. W. 219, 220, we said: "The doctrine of 'last clear chance' is applicable only if the defendant, or the motorman in the instant case, had actual knowledge of the perilous position of the other party and failed to use due care to avoid the injury which, by the exercise of due care, after acquiring the knowledge, could have been avoided. (Citing cases.) *The knowledge by the defendant of the perilous position of the other party may be proven by circumstantial, as well as by direct, evidence.*" (Italics ours.)

While the driver testified that he "took his eyes off" of decedent after the latter took six or seven steps in a southwesterly direction and did not again see him until he reached a point about two feet south of the front end of his truck, the physical facts and circumstances are sufficient to warrant the jury in finding that the truck driver actually saw the decedent in front of, or approaching his truck, at such a distance, that in the exercise of ordinary care he could have stopped or changed the course of his truck, and thus have avoided the accident.

The record in this case upon this point presents a troublesome question, but we cannot say as a matter of law, under the record presented, that defendant's driver did not discover decedent's perilous position in sufficient time so that by the exercise of reasonable care, he could have stopped or changed the course of his truck in time to avoid the accident, after discovering decedent's perilous position.

We are, therefore, constrained to hold that under the evidence presented, the question of the defendant's negligence, after discovering decedent's perilous position on the traveled portion of the road, was, under the peculiar facts of this case, properly submitted to the jury, under the "last chance" doctrine.

II. Appellant also contends that the court erred in overruling defendant's motion for a directed verdict upon the ground "that the plaintiff has failed to establish * * * that the accident and injuries received by decedent were the proximate cause of decedent's death."

■■■ The evidence in this case shows that the decedent was knocked down and received bruises, contusions, and injuries to his arms, body, and head, and a severe shock; that decedent was taken home, put to bed, and placed under the care of doctors and nurses, and remained there continuously until his death. Two medical experts on behalf of plaintiff gave testimony tending to show that decedent's death was the probable result of the injuries received. This was the only expert testimony offered on either side. Defendant offered no evidence whatever as to whether or not the injuries received were likely to have caused the death. That the expert opinion evidence is competent is supported by the following cases: State v. Morphy, 33 Iowa 270, 11 Am. Rep. 122; Armstrong v. Ackley, 71 Iowa 76, 32 N. W. 180; Sachra v. Town of Manilla, 120 Iowa 562, 95 N. W. 798; Nicoll v. Sweet, 163 Iowa 683, 144 N. W. 615, L. R. A. 1918C, 1099, Ann. Cas. 1916C, 661; Roberts v. Hennessey, 191 Iowa 86, 181 N. W. 798; Shepard v. Carnation Milk Co., 220 Iowa 466, 262 N. W. 110.

In Armstrong v. Town of Ackley, 71 Iowa 76, loc. cit. 78, 32 N. W. 180, 181, this court said:

"* * * we think, a physician may give an opinion, after making * * * examination, as to the extent and consequences *likely* to follow the injury, and also what caused it." (Italics ours.)

In Nicoll v. Sweet, 163 Iowa 683, loc. cit. 685, 144 N. W. 615, 616, L. R. A. 1918C, 1099, Ann. Cas. 1916C, 661, this court said:

"It is also shown that, from such an injury as the deceased suffered, pneumonia is likely to follow as a natural consequence. No other injury or efficient cause for the disease is suggested, and the question thus presented is one of fact and not of law."

In the recent case of Shepard v. Carnation Milk Co., 220 Iowa 466, loc. cit. 473, 262 N. W. 110, 114, this court said:

"When an expert expresses his opinion as to the probabilities, * * * his testimony is entitled to consideration and such weight as the trier of fact thinks it deserves, even though such expert admits the possibility of his being in error."

The testimony discloses that plaintiff's decedent received certain injuries. After receiving the injuries, pneumonia set in, from which he died. Plaintiff's evidence tended to show that death resulted from such injuries. Defendant offered no evidence to the contrary. In the absence of any evidence to the contrary, we are constrained to hold that the evidence offered was sufficient to make the question of the cause of decedent's death one for the jury.

. III. Appellant also contends that the lower court erred in overruling its motion for a directed verdict, upon the ground "that the evidence establishes merely that defendant's driver was engaged in a governmental function and not in a ministerial capacity, at the time of the accident."

Appellant in its answer made no such defense or attack upon plaintiff's petition. The petition alleges that Herman Seiser, driver of defendant's truck, was an employee in the streets department of the defendant city, and was driving the defendant's truck with the permission and authority of the defendant pursuant to his duties in connection with the care of the streets in said city. The defendant's answer admitted "that at said time and place one Herman Seiser, an employee of the defendant city * * * in the streets department, was driving an automobile truck owned by the defendant city * * *, with the consent of said owner." There was no allegation in defendant's answer denying that the truck driver was engaged in a ministerial duty; nor does it contain any allegation that the driver was engaged in a purely "governmental capacity". The allegation of plaintiff's petition that defendant's driver was engaged in performing his duty as an employee in the street department of the city is supported by the testimony of the driver who said:

"In 1934, I was employed in the streets department. I operated and drove a truck in connection with my duties in that department. * * * I kept the truck at my place, at home. I ordinarily went to work at 6:30 in the morning. *My first duty on going to work, ordinarily, was to go after the street commissioner * * * at his home * * ** in the northeast part of town."

These facts are established by the pleadings or the proof. It, therefore, appears that one of the driver's first duties in the morning was to get his immediate boss, the street commissioner. This was one of the duties connected with his work in the streets department, and he was performing that duty on the morning in question.

While this evidence shows almost conclusively that the driver was engaged in a ministerial capacity, it is not necessary to determine that question here for the following reason: Section 5026 of the Code provides that:

''In all cases where damage is done by any car * * * driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage.''

In view of this provision of the foregoing statute, it is only necessary in the first instance to show that the car was driven with the consent of the owner, and that injury resulted from the negligence of the driver. These facts are shown by the record. Defendant contends, however, that the defendant's driver at the time in question was merely engaged in the performance of a ''governmental function'', for the negligent performance of which there is no liability. This would create an exception to the statutory liability contained in section 5026.

It may be conceded that the city is not liable for the negligence of its employees engaged in the performance of a purely ''governmental function'', relating to the duties of employees in the police and fire departments, etc. Appellee contends, however, that this is an affirmative defense, which must be alleged in the pleadings and established by the evidence. In the absence of any such allegations in the petition, and in the absence of any evidence thereof, this defense cannot be raised here. As supporting this rule see the following cases: Heiman v. Felder, 178 Iowa 740, 160 N. W. 234; Roberts v. Ozias, 179 Iowa 1141, 162 N. W. 584; Murphy v. Williamson, 180 Iowa 291, 163 N. W. 211; Beck v. Scott, 185 Iowa 401, 170 N. W. 770; Jones v. Sioux City, 185 Iowa 1178, 170 N. W. 445, 10 A. L. R. 474; Nolan v. Guggerty, 187 Iowa 980, 174 N. W. 706; New Prague Flouring Mill Co. v. Spears, 194 Iowa 417, 189 N. W. 815; State Bank v. Oyloe Piano Co., 195 Iowa 1152, 193 N. W. 403; Fairley v. Falcon, 204 Iowa 290, 214 N. W. 538; Iowa Law Review, Vol. XX, p. 49.

That such matters constitute an affirmative defense is shown by the case of Jones v. Sioux City, 185 Iowa 1178, 170 N. W. 445, 448, 10 A. L. R. 474. In that case, loc. cit. 1185, this court said:

"We think it proper to say that the burden of proof was upon the defendant to first introduce evidence to establish the affirmative defense pleaded by it, that the automobile and the driver * * * were engaged in a governmental act. * * * Mansfield v. Mallory, 140 Iowa 206, 118 N. W. 290; Wingate v. Johnson, 126 Iowa 154–157, 101 N. W. 751; Hoffman v. Independent School Dist., 96 Iowa 319, 65 N. W. 322. We are of the opinion that these cases sustain the proposition. In any event, the evidence introduced by plaintiff made a prima facie case."

For the reasons hereinabove expressed, we are constrained to hold that the judgment of the lower court was right, and the same is hereby affirmed.—Affirmed.

PARSONS, C. J., and ALBERT, STIGER, ANDERSON, HAMILTON, RICHARDS, and DONEGAN, JJ., concur.