RUSSELL L. WINEGARDNER, by JOHN E. WINEGARDNER, his father and next friend, Appellant, v. LOREN O. MANNY, Appellee.

No. 46783.

JANUARY 8, 1946.

OPINION MODIFIED AND REHEARING DENIED. MARCH 13, 1946.

J. R. McManus and Ralph N. Lynch, both of Des Moines, for appellant.

Gibson, Stewart & Garrett, of Des Moines, for appellee.

GARFIELD, J.—The question presented is whether the evidence is sufficient to have warranted submission to the jury under the doctrine of last clear chance. This doctrine, sometimes called the humanitarian doctrine, proceeds upon the theory that notwithstanding the negligence of an injured plaintiff, if defendant knows of the peril in which plaintiff has placed himself, it is defendant's duty, after acquiring such knowledge, to avoid the accident if that can be done by the exercise of ordinary care. For a breach of such duty which results in injury there may be a recovery. The doctrine applies where a defendant is aware of plaintiff's perilous position in time to avoid the accident by the exercise of ordinary care but fails to do so. The doctrine refers to negligence after negligence. It is a phase

of the doctrine of proximate cause. The theory is that the later negligence becomes the proximate cause. Groves v. Webster City, 222 Iowa 849, 854–857, 270 N. W. 329, and cases there cited; 5 Am. Jur. 778, sections 489, 490; 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., 385–392, section 2801; 2 Berry, Automobiles, Seventh Ed., 364, 366, section 2.337. See, also, annotations 92 A. L. R. 47, 119 A. L. R. 1041.

It is our duty to consider the evidence in the light most favorable to plaintiff. When so considered, we think a jury could properly find that plaintiff was in a position of peril; defendant had actual knowledge thereof in time to have avoided the collision by the exercise of ordinary care; after acquiring such knowledge he failed to exercise such care and injury resulted. See Lynch v. Des Moines Ry. Co., 215 Iowa 1119, 1125, 245 N. W. 219. It follows that the case should have been submitted to the jury.

Plaintiff was fourteen at the time in question. (We refer to the boy, not to his father and "next friend," as plaintiff.) While coasting on his sled on Main Street in the town of Ankeny in daylight on January 11, 1943, plaintiff was struck by defendant's 1942 Plymouth sedan. (The 1940 population of Ankeny was 779.) Main Street is paved, fifty-five and a half feet between curbs, and runs east and west. Shortly before the accident plaintiff, with his sled in his hands, was standing in a north-and-south alley, in line with the sidewalk on the north side of Main Street. The sidewalk is twelve feet four inches wide, the distance from the buildings to the north curb. Plaintiff was three or four feet east of the post office, which is on the west side of the alley.

Defendant was driving not over fifteen to twenty (his answer alleges five to ten) miles an hour west on Main Street, which is "a little down grade from the alley east." Plaintiff coasted out into the icy street in a southeasterly direction. The left bumper guard on defendant's car struck plaintiff as he lay on his sled headed south, pushed the sled fifteen to twenty feet west, and stopped on a line about even with the center of the alley. Plaintiff was very severely injured.

The alley is twenty-one feet wide. Going east from the

414

alley there are a pool hall twenty-six feet wide, a grocery store thirty-six feet seven and one-half inches in width, and a variety store twenty feet two and one-half inches wide. Three or four automobiles, headed northwest into the curb, were parked in front of these buildings from the alley east. The collision occurred slightly north of the center of the street, south of the car parked next to the alley. The alley where plaintiff was standing is a foot higher than Main Street. Plaintiff was about five feet tall.

Plaintiff's father testified to this talk with defendant ten days to two weeks after the accident:

"He told me he had seen the boy *when he was about down to the variety store* coming west on Main Street, had seen him standing in the alley, with his sled in his hand, and *knew he was going to come out into the street,* but thought he was going to go straight across the street and that he would be across before he [defendant] got there."

On cross-examination this witness said:

"He told me he seen the boy with the sled in his hand. He knew he was going to slide out in the street. * * * he seen him there with the sled in his hands and was heading towards the street. * * * Why, he seen him drop the sled down. * * * He said he seen the boy drop the sled and knew he was coming out into the street. Q. Oh, he saw him *in the act of dropping on the sled,* is that it? A. Yes. * * * Q. But he did see him as he slammed down in the street on his sled, that is what he told you? A. Um-hmm. * * * he said he was down in front of the variety store when he made the observation. * *. * That point would be in the neighborhood of 80 feet east of where the boy was."

The witnesses Mr. and Mrs. Monthy were driving east on Main Street at the time of the accident and saw it. When they were in front of the store adjoining the post office on the west they saw the boy slide out into the street from about the middle of the alley. At about that time defendant's car was at the east side of the grocery store. That is where Mr. Monthy first saw it. Mr. Monthy testified that when plaintiff's sled was south

of the car parked just east of the alley the boy saw defendant and turned sharply to the right in an attempt to avoid the collision. But, as stated, defendant's left bumper guard struck plaintiff.

There is nothing to conflict with the above evidence. The testimony of Mr. and Mrs. Monthy corroborates to some extent (if corroboration were necessary) that given by plaintiff's father. In any event, it is consistent with the father's evidence.

While, of course, there is other testimony, we have mentioned enough to demonstrate that a jury could properly find plaintiff was in a position of peril when he was headed into the street from the alley with his sled and that defendant had actual knowledge of such peril in time to have avoided the collision by the exercise of ordinary care. The undisputed evidence is that defendant knew when he first observed plaintiff that he was about to coast into the street in front of defendant's oncoming car. In order for defendant to have had actual knowledge of plaintiff's peril it is not necessary that he actually knew an accident would be inevitable if defendant failed to exercise care. It is sufficient if peril was so imminent that to a person of ordinary prudence the infliction of injury would seem probable if proper effort were not made to avoid it. Lundien v. Fort Dodge, D. M. & S. R. Co., 166 Iowa 85, 100, 147 N. W. 308; 4 Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., 399, 400, section 2805; 45 C. J. 992, section 543. See, also, James v. Iowa Cent. R. Co., 183 Iowa 231, 235, 165 N. W. 999, 166 N. W. 1045.

From a place in Main Street south of the center of the alley, where plaintiff started with his sled, to the point in the street south of the east side of the variety store, where defendant was when he observed plaintiff, was over ninety-three feet by measurement. There is substantial evidence that after observing plaintiff, defendant traveled seventy-five feet to the place of collision. The jury could properly conclude this was sufficient time for defendant to have avoided the collision by the exercise of ordinary care.

It is equally clear a finding would be justified that defendant failed to exercise ordinary care to avoid injuring plain-

tiff after he knew of plaintiff's perilous position. We have implied as much in the preceding paragraph. Defendant has owned and driven automobiles since 1920. As stated, the accident occurred January 11, 1943. Defendant's car was a 1942 model with very good brakes. Except for the Monthy car, there was no other traffic and nothing to divert defendant's attention. Defendant was driving slow; he alleges in his answer five to ten miles per hour and that he stopped his car in less than a car's length after the collision. It was stipulated his car is fifteen and one-half feet from bumper to bumper. The jury could find that after he observed plaintiff starting into the street with his sled, down to the point of collision, defendant traveled nearly five times the distance needed to stop his car. There is ample evidence that prior to the collision defendant made no attempt, after discovering plaintiff, to stop, reduce his speed, change the course of his car, sound a warning of his approach, or otherwise avoid colliding with the sled.

Plaintiff's father testified:

"I asked Mr. Manny if he put his brakes on or tried to swerve or sounded his horn or anything and he said 'No.' He said he was really scared and didn't know what to do. * * * Manny said he was not going fast."

It is to be noticed defendant did not say, in answer to the father's question, that he did not have time to apply his brakes, swerve, or sound his horn.

Mr. Monthy said:

"I heard no sound or noise that would indicate the brakes were being applied. * * * The Manny car didn't slow down until after it hit the boy."

Mrs. Monthy testified:

"I watched Manny's car from the time I first saw it in front of the variety store until it stopped with front end about the center of the alley. * * * It came in a straight line and I did not notice any change in its speed from the time I first saw it. I heard no horn or signal warning."

There is other testimony to the same effect.

Since the middle of plaintiff's body as he lay on his sled

was struck by the left bumper guard of defendant's car, it is apparent that plaintiff cleared about half the path in which defendant was traveling. The conclusion is warranted that defendant could have avoided the collision by even a slight reduction in speed after he observed plaintiff.

The burden of defendant's argument is that he was not aware of plaintiff's peril until the sled reached the path in which defendant was traveling and it was then too late to avoid the collision. The argument is without merit and is disposed of by what we have already said. There is ample evidence that when defendant first saw plaintiff he was about to coast into the street, he dropped onto his sled for that purpose, and defendant then knew plaintiff was starting into the street on his sled ahead of defendant's car. As stated, a finding would be warranted that plaintiff was then in peril and defendant then had actual knowledge thereof.

In support of our holding that the case should have gone to the jury, see Groves v. Webster City, 222 Iowa 849, 270 N. W. 329; Pettijohn v. Weede, 219 Iowa 465, 469, 470, 258 N. W. 72; Lynch v. Des Moines R. Co., 215 Iowa 1119, 245 N. W. 219; Williams v. Mason City & Fort D. R. Co., 205 Iowa 446, 453, 454, 214 N. W. 692; Roennau v. Whitson, 188 Iowa 138, 153, 154, 175 N. W. 849; Williams v. Lombard, 87 Or. 245, 170 P. 316; Murphy v. Quick Tire Service, Mo. App., 47 S. W. 2d 202. And, as having some bearing, see Kallansrud v. Libbey, 234 Iowa 700, 705, 13 N. W. 2d 684, 686; Samuelson v. Sherrill, 225 Iowa 421, 424, 280 N. W. 596; McDowell v. Interstate Oil Co., 212 Iowa 1314, 1316, 1317, 237 N. W. 456.

This case is not within the scope of decisions which hold that as a matter of law a motorist is not liable for injury to a child who unexpectedly darts out from a concealed place into the path of the vehicle so suddenly that injury could not be avoided by the exercise of ordinary care. See cases last above, especially, Kallansrud v. Libbey, 234 Iowa 700, 703, 13 N. W. 2d 684, 686. See, also, Yeager v. Gately & Fitzgerald, 262 Pa. 466, 106 A. 76, 78. Of course, the jury could find the accident was unavoidable, as defendant contends. But we are not justified in so holding as a matter of law.—Reversed.

All JUSTICES concur.